Joan Claire (Bidwell) SOLA, Appellant,

v.

Robert Loyd BIDWELL, Jr., Respondent.

Nos. WD 54048, WD 54096.

Missouri Court of Appeals,
Western District.

Sept. 15, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1998.

As Modified Oct. 27, 1998.

Application for Transfer Denied
Dec. 22, 1998.

Jack A. Cochran, Nancy A. Beardsley, Blue Springs, for Appellant.

Bruce A. Bailey, Warrensburg, for Respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and HOWARD, JJ.

HOWARD, Judge.

This is an appeal from the dissolution of the marriage of Robert L. Bidwell, Jr. ("Bob") and Joan Sola (formerly Joan Bidwell) ("Joan"). Joan raises three points on appeal. First, she contends the trial court erred by awarding her only $1,000.00 per month maintenance because 1) her health status indicated need for continuing and accelerating medical treatment, the cost of which would have been provided at no charge for the rest of her life had Bob not voluntarily retired early from active duty; 2) her health status indicated her inability to maintain gainful employment and her monthly expenses exceeded $4,600.00; and 3) her current income of $500.00 per month from her employment was far short of her minimal monthly expenses. Second, Joan claims the trial court erred by not including in its divi-

sion of assets all the funds that Bob had transferred to foreign banks and relatives and converted to cash because there was no evidence that controverted the sums transferred and converted. Third, she claims the trial court erred by not obligating Bob for payment of all of Joan's fees and costs associated with the entire proceeding because the evidence established Bob's continuous pattern of delay, avoidance of service, hindrance of discovery and economic blackmail which was intended to destroy Joan financially and resulted in Joan's enormous expenditure of funds for private investigators, attorney's fees, costs and loans from her mother.

Bob raises five points on cross-appeal. First, he contends the trial court did not have personal jurisdiction over him in order to enter its judgment for maintenance, attorney's fees, court costs, and division of marital property outside the State of Missouri because Bob's residence was in the State of Colorado and there were insufficient minimum contacts between Bob and the State of Missouri to establish personal jurisdiction. Second, Bob claims the trial court misapplied the law in dividing his military disposable retirement pay in that it lacked jurisdiction to do so because the jurisdictional prerequisites set forth in 10 U.S.C. § 1408(c)(4) were not met. Third, Bob contends the trial court erred, abused its discretion, and lacked sufficient evidence to support its judgment awarding Joan attorney's fees of $74,213.26 because such an award is so excessive, arbitrary and unreasonable that it is unconscionable and shocking to the sense of justice. Fourth, Bob claims the trial court's judgment assessing court costs against him was not supported by the evidence in that Bob did not receive credit for $2,000.00 *pendente lite* suit money previously paid to Joan's counsel because Bob was ordered to pay all court costs totaling $2,492.25 and after receiving proper credit for payment the judgment should only be for $492.25. Fifth, Bob claims the trial court erroneously applied the law and abused its discretion in that the judgment entry awards a judgment against Bob in the amount of $10,609.00 for support and maintenance arrearage and the trial court failed to set forth its financial calculations because the trial court is required to include in its findings or judgment the calculations used in arriving at the judgment amount.

### Facts

Joan and Bob met in 1971 while Bob was stationed at Wentworth Military Academy in Lexington, Missouri. Bob was on active duty with the United States Army. Joan was teaching at Wentworth at the time. They married on December 18, 1973. The couple lived in Lexington, Missouri until Bob's next duty assignment. Throughout the next fifteen years of their marriage, the parties moved from duty station to duty station. They moved thirteen times in fifteen years. Joan and Bob last resided together at his duty station in Oslo, Norway. Bob's assignment after Norway was Somalia. Bob and Joan agreed that Joan would return to Concordia, Missouri, while Bob went on to Somalia. Joan returned to Missouri on or around July 1, 1988.

At the time of trial, Bob had been on active duty with the Army since September 16, 1963. He retired from the Army with the rank of colonel on June 1, 1992. When Bob retired from active military duty, he traveled around trying to find a place he wanted to live. Bob eventually moved to Lamar, Colorado, where his family had a ranching operation. He works as a general manager for his family's ranch at a net wage of $1,000.00 per month. His retirement pay from the Army is $48,528.00 annually. The amount is adjusted annually for cost of living. Bob also has a business, Lobo Enterprises. The two facets of the business are leatherworking and weapons consulting. The leatherworking generates approximately $1,239.00 per year. The amount generated by Bob's weapons consulting is unknown. Bob receives small yearly dividends from stock that he owns in the family business, Walker Land & Cattle Company.

Joan was certified to teach French when the couple met. During the marriage, she completed an art preparation course for commercial artists. She also passed a real estate license examination and completed a course as a taxpayers' assistant with H & R Block. Joan studied art and worked as an artist

throughout most of their marriage. She also suffered from numerous chronic health problems. At the time of trial, she was working part time as a teacher.

Joan filed her petition for dissolution of marriage on February 28, 1989. However, despite repeated attempts, she was unable to obtain service of process on Bob until August 22, 1993. The marriage was dissolved on January 29, 1997.

## Argument

We first address the jurisdiction issues, as our discussion of the other points on appeal is contingent on the outcome of these issues. For the sake of clarity, we will continue to discuss the other points on cross-appeal in order, and then address the points on direct appeal.

### I. Cross–Appellant's Points

#### Personal Jurisdiction

■ The first point on cross-appeal is that the trial court did not have personal jurisdiction over Bob, and therefore the trial court erred in entering judgment for maintenance, attorney's fees, and court costs, and in dividing marital property outside the State of Missouri because Bob's residence was in the State of Colorado and there were insufficient minimum contacts between Bob and the State of Missouri to establish personal jurisdiction.

■ Joan contends that Bob waived any challenge to personal jurisdiction because he did not file his motion to strike, in which he raised the issue of lack of personal jurisdiction for the first time, within the time required by Rule 55.25. We agree. The defense of lack of personal jurisdiction may be raised either by motion or by including it in a responsive pleading. If the defense is made by motion, it "shall be made within the time allowed for responding to the opposing party's pleading. . . ." Under Rule 55.25, a defendant "shall file an answer within thirty days after the service of the summons and petition. . . ." Rule 44.01 provides that the time period for answering begins to run on the day after service of process. Bob was served with process on August 13, 1993. Un-

der the provisions of Rule 44.01, Bob had until Monday, September 13, 1993 to respond to Joan's petition. Bob's counsel entered an appearance on August 17, 1993. Bob filed his motion to strike on September 15, 1993. Bob contends that because he filed his motion to strike within 30 days of his entry of appearance, his challenge to the trial court's personal jurisdiction was timely.

■ In *Greenwood v. Schnake,* 396 S.W.2d 723, 724 (Mo.1965), the Missouri Supreme Court found as follows:

[A] defendant objecting to lack of jurisdiction over his person should *promptly* file the motion raising the question. Such a motion must be made within the time allowed for responding to the opposing party's pleading . . . and if not made within the time therein limited the party waives all objections to jurisdiction then available to him. . . .

Bob argues that *Greenwood* should be ignored to the extent that it conflicts with that court's more recent holding in *Crouch v. Crouch,* 641 S.W.2d 86 (Mo. banc 1982). In *Crouch,* the court stated in a footnote that

[a]ny waiver of the jurisdictional defense occurs not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules. . . . [W]ithin the time allowed for serving the answer the defendant may assert this defense unless he has waived it by some action other than his voluntary appearance. [Waiver] results from a "failure to assert the defense within the time prescribed by the rules" whenever the defendant appears and fails to raise the defense within the time allowed for pleading. Thus, if the court lacks personal jurisdiction, the defendant cannot waive the defense by nonappearance because, until he voluntarily appears, the time period allowed for serving the answer cannot begin to run.

*Crouch,* 641 S.W.2d at 90 n. 4. However, *Crouch* is a plurality opinion in which two judges concurred, one judge concurred in the result, and two judges concurred in part, not including the above footnote. *Id.* at 94. Where an opinion has only the full concur-

rence of its author and two other judges, with the other four judges concurring only in the result, it is "not authoritative except as to the result reached therein" and cannot overrule any prior decisions. *Musgraves v. National Dairy Products Corp.,* 400 S.W.2d 93, 96 (Mo.1966); *see also Hester by Scott v. Rymer,* 717 S.W.2d 251, 254 (Mo.App. S.D. 1986) (citing *Moore v. Brown,* 350 Mo. 256, 165 S.W.2d 657, 660–61 (1942)) (where a principal opinion of the Supreme Court of Missouri has the full concurrence only of its author and two other judges, another judge concurring only in the result, and three judges dissenting, it is binding only as to the result reached therein, and does not overrule prior inconsistent decisions). Similarly, in this case, we find that *Crouch* does not overrule the prior inconsistent holding of the court in *Greenwood.* Our finding is bolstered by the fact pointed out by Judge Seiler in his concurring opinion in *Crouch* that "footnote 4 ... is not necessary to the decision and should be reserved for decision where the issue is directly before the court." *Crouch,* 641 S.W.2d at 94.

■ A defendant, by merely staying out of court, even indefinitely, does not waive an objection to improper service. *State ex rel. Boll v. Weinstein,* 365 Mo. 1179, 295 S.W.2d 62, 66 (1956), *overruled on other grounds by State ex rel. DePaul Health Center v. Mummert,* 870 S.W.2d 820, 822 (Mo. banc 1994). Even after the time to file a responsive pleading has passed, a defendant could challenge jurisdiction as long as the first appearance in the case includes such a challenge. However, when Bob filed his entry of appearance, he became a participant in the case, free to contest personal jurisdiction. As a participant, he was bound by the Rules of Civil Procedure, which require personal jurisdiction objections to be lodged within the time allowed for a responsive pleading. The time to file a responsive pleading begins to run from the date of service, not from the entry of appearance. Bob did not file his motion challenging the court's personal jurisdiction within the time provided by the rules. Therefore, he waived any challenge he may have had to the court's jurisdiction over his person. Point denied.

### Jurisdiction to Divide Military Pension

■ The second point on cross-appeal is that the trial court did not have jurisdiction to divide Bob's military disposable retirement pay because the jurisdictional prerequisites set forth in the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c) (1983) were not met.

■ The only power the court had to subject Bob's retirement pay to the terms of the dissolution decree is that conferred in 10 U.S.C. § 1408. *Harris v. Harris,* 670 S.W.2d 171, 172 (Mo.App. W.D.1984). Section 1408(c), in relevant part, provides as follows:

(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

(4) A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

"This limitation was apparently adopted to curtail 'forum-shopping' by spouses who might file proceedings in states with favorable marital property laws but with which the military pensioner had little contact." *Matter of Marriage of Booker,* 833 P.2d 734, 739 (Colo. banc 1992); *In re Marriage of Akins,* 932 P.2d 863, 867 (Colo.Ct.App.1997).

Joan argues that Bob did not raise this issue at trial, and he may not raise it for the first time on appeal. Joan also argues that the issue of the division of Bob's military pension benefits was tried by consent because Bob did not object to any evidence regarding the valuation or division of his military pension at trial. Joan further argues that because Bob affirmatively requested that the court divide his pension benefits,

he is estopped from objecting to the trial court's division of the benefits.

Because Bob did not argue at the trial level that his pension should not have been divided because of § 1408, we must decide whether he may raise the issue on appeal.[1] No Missouri court has addressed this issue, but we find authority from other jurisdictions persuasive.

■ "Most authorities view the language of § 1408(c)(1) as constituting an absolute bar to the exercise of any jurisdiction by state courts for any purpose over military pensions absent compliance with the personal jurisdiction requirements established by § 1408(c)(4)." *Booker*, 833 P.2d at 738 n. 9. (Citations omitted.) "A careful reading reveals that [§ 1408(c)(1)] is a limitation on subject-matter rather than personal jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1552 (9th Cir.1987); *see also Delrie v. Harris*, 962 F.Supp. 931, 934 (W.D.La.1997); *Lewis v. Lewis*, 695 F.Supp. 1089, 1091 (D.Nev.1988); *In re Marriage of McDonough*, 183 Cal.App.3d 45, 227 Cal.Rptr. 872, 876 (1986); *In re Marriage of Akins*, 932 P.2d at 866; *Allen v. Allen*, 484 So.2d 269, 270–71 (La.Ct.App.1986), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986).

■ A party may raise the issue of lack of subject matter jurisdiction at any time, and it may be raised for the first time on appeal. *Groh v. Groh*, 910 S.W.2d 747, 749 (Mo.App. W.D.1995). Therefore, even though Bob did not raise the issue of § 1408 at trial, he may raise the issue on appeal.

■ We next consider whether the trial court had subject matter jurisdiction over the military pension pursuant to § 1408(c)(4). Joan does not argue that the trial court had jurisdiction to divide Bob's military pension because of his residence or domicile in the territorial jurisdiction of the court. Therefore, we discuss only whether Bob consented to the jurisdiction of the court within the meaning of § 1408.

No Missouri court has interpreted what it means to "consent to the jurisdiction of the court" within the meaning of § 1408(c). In the present case, Bob did not make a timely challenge to the general jurisdiction of the court over his person and never objected to the trial court's exercise of jurisdiction over his military pension. Once the court decided it had personal jurisdiction over him, Bob argued the case on its merits, requesting affirmative relief from the court on all issues, including the division of the military pension. Under the circumstances of this case, we find that Bob consented to the jurisdiction of the court regarding his military pension. Point denied.

## Attorney's Fees

■ Bob contends the trial court erred, abused its discretion, and lacked sufficient evidence to support its judgment awarding Joan attorney's fees of $74,213.26 because such an award is so excessive, arbitrary and unreasonable that it is unconscionable and shocking to the sense of justice.

■ In awarding attorney's fees, the trial court is considered expert in the necessity, reasonableness, and value of the legal services. *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App. W.D.1992). An award of attorney's fees in a dissolution proceeding will not be overturned on appeal absent a manifest abuse of discretion. *Id.* An abuse of discretion will be found only if the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration. *McNeely v. McNeely*, 935 S.W.2d 103, 104 (Mo.App. W.D.1996). The party challenging an award of attorney's fees must show that the award was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

■ The trial court may consider all relevant factors when awarding attorney's fees in a divorce proceeding and is not limited to solely the financial resources of the parties. *Lawrence v. Lawrence*, 938 S.W.2d 333, 338

---

1. Although Bob claimed that the trial court did not have personal jurisdiction over him, once the court determined it did have jurisdiction he did not argue that § 1408 prevented the court from dividing his military pension.

(Mo.App. W.D.1997). The judgment indicates that the trial court took into account "the financial resources of both parties, the extraordinary attempts by Respondent to avoid service, and the difficulty encountered by Petitioner's attorneys conducting discovery." We find that the trial court's award of attorney's fees was reasonable and warranted by the evidence. Point denied.

### Credit for Previously Paid Costs

■ Bob claims the trial court's judgment assessing court costs against him was not supported by the evidence in that Bob did not receive credit for $2,000.00 *pendente lite* suit money previously paid to Joan's counsel because Bob was ordered to pay all court costs totaling $2,492.25, and after receiving proper credit for payment the judgment should only be for $492.25.

■ After considering all relevant factors, including the financial resources of both parties, a trial court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding regarding a divorce or a motion to modify a divorce decree. § 452.355.1 RSMo 1994; *Calhoun v. Calhoun*, 934 S.W.2d 14, 15 (Mo.App. E.D.1996). On appeal, the trial court's order regarding costs should be affirmed unless the court abused its discretion. *Baldwin v. Baldwin*, 926 S.W.2d 912, 914 (Mo.App. E.D.1996). The trial court specifically stated that its "judgments reflect payments previously paid to Petitioner on her attorney's fees and costs by Respondent as heretofore ordered by this Court." The evidence supports the trial court's judgment. As Joan points out, the cost of the private investigators hired to find and serve Bob alone exceeded $4,000.00. Point denied.

### Financial Calculations

■ Bob claims the trial court erroneously applied the law and abused its discretion in that the judgment entry awards a judgment against Bob in the amount of $10,609.00 for support and maintenance arrearage and the trial court failed to set forth its financial calculations because the trial court is required to include in its findings or judgment the calculations used in arriving at the judgment amount.

It is our opinion that the trial court's judgment is detailed enough to allow meaningful appellate review. The judgment states that the $10,609.00 it awarded Joan represents Joan's "fair and reasonable living expenses since August 30, 1993, less payments made to Petitioner by Respondent for living expenses and Court ordered maintenance payments." Bob does not argue that the trial court's arrearage award is erroneous, but rather he argues that because the trial court did not include its financial calculations in the judgment, it is impossible for him to "demonstrate the error in the method of calculation used by the trial court." We find that the trial court's description of the award is adequate to allow Bob to dispute the awarded amount. Point denied.

### II. Appellant's Points

#### Maintenance

■ First, Joan contends the trial court erred by awarding her only $1,000.00 per month maintenance because 1) her health status indicated the need for continuing and accelerating medical treatment, the cost of which would have been provided at no charge for the rest of her life had Bob not voluntarily retired early from active duty; 2) her health status indicated her inability to maintain gainful employment and her monthly expenses exceeded $4,600.00; and 3) her current income of $500.00 per month from her employment was far short of her minimal monthly expenses.

■ The trial court is afforded broad discretion to grant maintenance and its award will not be disturbed absent an abuse of discretion. *Allen v. Allen*, 927 S.W.2d 881, 885 (Mo.App. W.D.1996). The appellate court will interfere with a maintenance award only when it is patently unwarranted or wholly beyond the means of the spouse who pays maintenance. *Id.* The burden is on the party contesting maintenance to prove that the award of maintenance shocks the appellate court's sense of justice. *Id.* The evidence is viewed favorable to the decree, disregarding evidence to the contrary

and deferring to the trial court even if the evidence could support a different conclusion. *Id.*

We find that the trial court's maintenance award is fair and supported by the evidence. Point denied.

## Property Division

█ Second, Joan claims the trial court erred by not including in its division of assets all the funds that Bob had transferred to foreign banks and relatives and converted to cash because there was no evidence that controverted the sums transferred and converted.

█ The trial court has considerable discretion in dividing marital property. *Lenger v. Lenger,* 939 S.W.2d 11, 14 (Mo.App. W.D.1997). Division of property by the trial court will be affirmed if it is not unduly weighted in favor of one party so as to constitute an abuse of discretion. *Id.* The trial court's division of property is presumed correct, and the party contesting the property division bears the burden of overcoming this presumption. *Id.*

While Joan argues that there was no evidence to controvert her contention that Bob transferred funds to relatives and foreign banks, the record indicates otherwise. Bob testified that no transfers were made with the intent to defraud Joan, and that the transfers to his mother were to repay a loan on two vehicles. In addition, when Joan was asked at trial whether she had discovered anything that indicated to her that Bob had money somewhere else that he had not disclosed, she testified, "We have not discovered anything of that sort that we could, you know, attest to." The trial court is free to believe all, part or none of any witness's testimony and is the sole judge of the credibility of the witnesses. *Ritter v. Ritter,* 920 S.W.2d 151, 159 (Mo.App. W.D.1996). Therefore, the court did not err by not dividing all of the assets Joan claims should have been divided. Point denied.

## Attorney's Fees and Costs

█ Third, Joan claims the trial court erred by not obligating Bob for payment of all of her fees and costs associated with the entire proceeding because the evidence established Bob's continuous pattern of delay, avoidance of service, hindrance of discovery and economic blackmail which was intended to destroy Joan financially and resulted in Joan's enormous expenditure of funds for private investigators, attorney's fees, costs and loans from her mother.

As we have previously discussed under Bob's point on appeal concerning attorney's fees, the trial court considered all relevant factors in making its award of attorney's fees, including those that Joan contends should persuade this court to increase the award. Finding no abuse of discretion by the trial court, we will not disturb its award. Point denied.

The judgment of the trial court is affirmed.

All concur.