**Carol Jean JUDY, Appellant,**

v.

**Gregory Terry JUDY, Respondent.**

**No. WD 55841.**

Missouri Court of Appeals,
Western District.

June 1, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied
Sept. 21, 1999.

Edward W. Brandecker, Jr., Columbia, for Appellant.

Elizabeth Wilson, Columbia, for Respondent.

Before: Presiding Judge ROBERT ULRICH, Judge HAROLD LOWENSTEIN and Judge JOSEPH ELLIS.

LOWENSTEIN, Judge.

This appeal is from a judgment of dissolution of marriage. Appellant wife claims that the trial court erred in (1) failing to state whether the maintenance order was modifiable or nonmodifiable; (2) limiting maintenance to $200 per month for 18 months; (3) not distributing all of the parties' marital property; (4) including in wife's share of marital property, a car which was not owned by either party, and (5) not awarding attorney's fees to wife.

## I. FACTS

Appellant Wife and Respondent Husband were previously married and divorced, remarried on May 24, 1987, and separated June, 1996. Wife filed for divorce after Husband obtained an ex parte restraining order against her. No children were born of either marriage.

During the marriage, the couple lived in Clark, Missouri. Husband worked full-time at A.B. Chance. He also worked on, and maintained both a 60–acre tract where their house is located, and a 130–acre tract they owned near there. Every morning, Husband got up at five in the morning and got the chores done in the dark, then would come back to get ready for work, where he had to be by eight. He often had farm work to do when he returned from work also. The farm lost money each year, but Husband hoped to turn it around, as the land was important to him.

From 1989 until 1995, Wife worked both full-time and part-time at A.B. Chance as a literature inquiry clerk and as a photo lab assistant. She has also worked at Casey's, for the City of Columbia, and the University of Missouri. Wife is also a licensed cosmetologist. There was evidence of her good work performance at A.B. Chance. There was conflicting evidence concerning Wife's employment since the separation. Wife claims she is unable to work, and has not worked in three or four years, and Husband testified that she was working as a secretary at McBee Agri Supply.

Wife suffers from severe depression, or possibly a bi-polar disease, mixed manic or hypomanic. There was also evidence by Wife's witness that she may also suffer from vertigo. Her condition has required hospitalization, and at the time of trial she was on medication to control her illness. She currently receives social security disability of $331 per month for her mental illness. Wife claimed she is unable to work, and is unlikely to improve. However, there was conflicting testimony that employment may be therapeutic for her. She claims that her condition is severe enough to preclude her from finding employment, because any job she could do would need to be limited in hours and flexible. There was, however, evidence that she may tend to exaggerate her symptoms. The trial court specifically stated its finding that Wife is capable of employment.

Husband testified that throughout the ten years of the second marriage, he did not notice any signs of mental problems. The evidence showed she was a very good housekeeper, worked several different jobs, and as a licensed cosmetologist, she gave haircuts and permanents to people from the community. During the marriage, her son, from a previous marriage to another man, came to live with them in their one bedroom home, when he came home from the service. This arrangement caused problems between the couple, so Husband bought a trailer for the son, and set it up for him, putting in the driveway, sewer, and dug the lines. Husband paid

for everything and deeded an acre of land to the son, none of which has ever been repaid. Husband still makes payments on the trailer, as it is part of his mortgage, although the son sold the land and used the money to buy a house.

Towards the end of the marriage, Wife began to be more abusive and threatening toward Husband. She was in a state of depression for a few months, started coming out of it, but then went in to a manic phase. There was testimony that the manic phase may have been brought on by conflicting medications. Wife was arrested for hitting her mom and her niece, and Husband bailed her out. She also directed anger at her husband. When he bailed her out, she told him that she was going to divorce him. Finally, Husband sought and obtained an ex parte order against her.

The trial court divided the marital property. The marital property included, among other things, land, the home, vehicles and equipment, personal property, retirement funds, stock and mutual funds, and bank accounts. The trial court divided the marital property as follows:

| Awarded to Husband | Equity |
| --- | --- |
| Tract # 1–Home and 60 acres | $64,000 |
| Tract # 2–130 acres | $71,500 |
| Debt on tracts # 1 and # 2 | (52,184) |
| 1989 Toyota Pickup | $ 3,000 |
| Four Wheeler | $ 500 |
| Bailer, Raker, Mower | $ 1,000 |
| Household Goods | $ 1,860 |
| 401K | $16,390 |
| Bank Accounts | $ 600 |
| Hospital Bill (rotator cuff) | ($1,894) |
| Half of Dr. Bill of Wife | ($716) |
| Total | $104,056 |

| Awarded to Wife | Equity |
| --- | --- |
| Euro Pacific Growth Fund | $10,059 |
| Wal–Mart Stock | $ 7,988 |
| ICA Fund | $47,008 |
| Pioneer Fund | $18,408 |
| 1986 Toyota Pickup | $ 1,000 |
| 1990 Ford Tempo | $ 4,000 |
| Household Goods | $ 1,825 |
| Individual Retirement Acct. | $17,884 |
| Half of her Dr. Bill | ($716) |
| Hospital billWife | ($1,894) |
| Total | $105,560 |

The court found that the income producing assets set apart to Wife should produce in excess of $500 per month. The court also awarded Wife temporary maintenance of $200 per month, for 18 months.

▪ The judgment must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declared or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A reviewing court in a court tried case must "view the evidence and permissible inferences most favorably to the decree and disregard all contrary evidence and inferences," and "[w]here the trial court made no specific finding of fact, we consider that fact found in accordance with the result reached." *Liberty v. Liberty*, 826 S.W.2d 381, 383 (Mo.App.1992) (citations omitted).

## II. LEGAL ANALYSIS

### A. Modifiable vs. Nonmodifiable Maintenance

▪ The trial court ordered periodic temporary maintenance for 18 months, and did not state whether or not it was modifiable. In her first point on appeal, Wife contends that the trial court's failure to specify was in error. This court agrees.

▪ According to § 452.335.3, RSMo 1994, "[t]he maintenance order *shall* state if it is modifiable or nonmodifiable." (emphasis added). "When the decree is silent as to whether maintenance is modifiable or nonmodifiable, if the award of maintenance was based upon need, it is presumed to be modifiable." *Sprouse v. Sprouse*, 969 S.W.2d 836, 838 (Mo.App. W.D.1998). In the present case, the court stated in it's decree that Wife "is capable of employment and...is awarded $200 per month for eighteen months rehabilitative maintenance." In *Harris v. Harris*, 784 S.W.2d 630, 631 (Mo.App.1990), the court found the maintenance award to be based on

need, and that it should be modifiable due to the age of the wife, and "considering the uncertainty surrounding future events."

In the present case, the trial court failed to include the specification of whether maintenance was modifiable or nonmodifiable. Due to the court's silence on this matter, and because maintenance in this case was based upon need, and therefore presumed to be modifiable, the judgment is modified by specifying that the award of maintenance shall be modifiable.

## B. Time Limitation of Maintenance

■ Wife contends that the trial court erred in limiting maintenance to 18 months because there was no evidence that she will then be capable of supporting herself or that her economic prospects will have improved. It is Wife's contention, that because of her mental illness and vertigo, she will need to be hospitalized on an unpredictable basis and any job she had would have to be very flexible and require few hours.

Section 452.335.1, as relevant here, allows the trial court to grant maintenance if a spouse lacks sufficient property to provide for his or her reasonable needs and is unable to support themselves through appropriate employment. Section 452.335.2 prescribes the amount and period of time for maintenance after considering ten enumerated factors, including: (1) the financial resources of the party seeking maintenance; and (7) the physical and emotional condition of the spouse seeking maintenance.

■ The award of maintenance is within the sole discretion of the trial court, and will not be disturbed absent an abuse of discretion. *Sola v. Bidwell,* 980 S.W.2d 60, 67 (Mo.App. W.D.1998); *Harris,* 784 S.W.2d at 630. "The burden is on the party contesting maintenance to prove that the award of maintenance shocks the appellate court's sense of justice." *Sola,* 980 S.W.2d at 67. The evidence is viewed in the light favorable to the decree, "dis-

regarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Id.* at 67–8.

■ The trial court found that Wife "is capable of employment, and . . . is awarded $200 per month for eighteen (18) months rehabilitative maintenance." At trial, there was evidence that Wife had been employed before, and had been considered a good employee, and she is also a licensed cosmetologist. Despite her assertions that she is unable to work, there was testimony that employment may not only be possible, as many with her condition are highly functional, but employment may also be therapeutic for her. Employment could give her a sense of "self-efficacy" and contribute to "a hoped for goal of autonomy." There was also evidence that the stress of the pending dissolution could temporarily inflame her condition, from this, it could be reasonably inferred that her condition will improve. Further, some expert testimony suggested that Wife might tend to exaggerate her symptoms. The trial court may believe or disbelieve the credibility of witnesses, and the evidence must be viewed in the light most favorable to the outcome. Rule 73.01; *Liberty,* 826 S.W.2d at 383. In light of the fact that Wife has worked in the past, perhaps even since the separation, her condition does not necessarily preclude her from working. As the trial court found, her symptoms may improve and she may even tend to exaggerate her symptoms; that work may actually be therapeutic for her; and that she has employable skills, this court does not find an abuse of discretion in limiting maintenance to 18 months.

■ The trial court did not specifically state the basis for determining eighteen months to be the proper duration. However, "[a]wards of limited duration are entirely proper when the trial court has before it evidence of some impending change in the financial conditions of the parties or at least some reasonable expectation that such a change will occur." If

there is a rational basis to support the court's determination, then an award of limited maintenance should stand. *Stewart v. Stewart,* 866 S.W.2d 154, 158 (Mo.App.1993) (citations omitted). "A trial court is vested with the discretion of limiting the duration of maintenance where there is evidence of or at least a reasonable expectation of an impending change in the financial condition of the parties." *Royal v. Royal,* 617 S.W.2d 615, 619 (Mo.App.1981). Limitations placed on the duration of maintenance based on "mere speculation," and not supported by sufficient evidence that the parties' circumstances will be "markedly different in the future," constitute an abuse of discretion. *Summerville v. Summerville,* 869 S.W.2d 79, 84 (Mo.App.1993); *Thompson v. Thompson,* 853 S.W.2d 410, 412 (Mo.App. 1993). In the case at bar, the durational limitation of eighteen months was supported by evidence that Wife has the ability to work, has employable skills, and received substantial income-producing property. Wife's employment would constitute a favorable change in her financial condition. There was sufficient evidence in the record for a conclusion that within a year and a half of the dissolution, the wife's physical and emotional condition would allow her to become self-sufficient. She had worked and had the skills for self-support, and once the dissolution had been granted, she could again continue working. The trial court did not abuse its discretion in limiting the duration of maintenance. Wife's second point is denied.

## C. Amount of Maintenance

■ In Wife's third point, she contends that the trial court erred in limiting maintenance to $200 per month because the court assumed, in error, that investment property she was awarded would yield in excess of $500 per month, and would leave her unable to meet her reasonable needs. She requests that she be granted $600 per month maintenance.

■ Again, awards of maintenance, including amount and duration, are matters resting within the broad discretion of the trial court; the "appellate court will not interfere unless it appears that the trial court has abused that discretion." *L.A.L. v. L.L.,* 904 S.W.2d 50, 52 (Mo.App.1995); see also *Jung v. Jung,* 886 S.W.2d 737, 740 (Mo.App.1994). Also, "the marital property awarded to [wife] bears upon the amount of maintenance to be awarded," and it is not necessarily an abuse of discretion if the "maintenance award falls short of [her] monthly expenses." *Chambers v. Chambers,* 910 S.W.2d 780, 784 (Mo.App. 1995); see also *In re Marriage of Colley,* 984 S.W.2d 163, at 172–73 (Mo.App.1998).

■ Even if the trial court's finding, incorporating the miscalculated monthly income from the investment property, was in error, the $200 per month maintenance award was still not an abuse of discretion. The trial court found that the income-producing property would provide Appellant with income of $500 per month. This figure is presumed to be based on Husband's exhibit which showed the Edward Jones Securities to yield a yearly income of $5,376.00, which when added to the yearly income from the Pioneer Fund of $1,423.08,[1] would equal $6,799.08. If this were correct, the combined monthly income from the two sources would be $566.59. However, the Edward Jones Securities was calculated by adding the ordinary dividends and capital gain distributions to the "gross dividends and other distributions," which already *includes* those two amounts. The Edward Jones Securities should actually have been stated as $2,688 per year, which when added to the income from the Pioneer Fund would equal $4,111.08 per year, or $342.59 per month. Besides this amount, Wife also

1. This amount is taken from Husbands exhibit. There was, however, other evidence that this amount could be as high as $2,500.

receives $330 of social security disability. Wife's income is, therefore, $672.59 per month; when combined with the $200 maintenance award, her monthly income is $872.59. Wife testified that she could live on $930 or $940 per month. As the trial court found, Wife is capable of supplementing this income by seeking employment. Further, Wife received half of the personal property; half of the $2,100 earned from the sale of cut timber, and income-producing property. In light of these facts, this court does not find an abuse of discretion in the amount of maintenance awarded. Point III is denied.

### D. Distribution of Property

■ In Appellant's fourth point, she asserts that the trial court erred by not distributing all of the marital property, because the court failed to address (1) Husband's pension and retirement plans; (2) earnings from the sale of cattle, which were marital property; and (3) Husband's expenditure of funds from bank accounts. In her fifth point, Appellant contends that the trial court's distribution of property was in error because it included in Wife's share, a 1990 Ford Tempo, which was not owned by either party, and requests that Husband be ordered to pay Wife $2,000 in cash, which is half of the value of the car.

■ According to Section 452.330.1, RSMo Cum.Supp.1997, "In a proceeding for dissolution of the marriage or legal separation, . . . the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors. . . ." "[T]he trial court [has] no discretion or leeway to divide or not divide the 'marital property' on a 'just' basis, it [is] inexorably commanded [by § 552.330.1] to do so—'the court * * * shall divide the marital property in such proportions as the court deems just after considering all relevant factors' including those specifically enumerated.'" Corder v. Corder, 546 S.W.2d 798, 804 (Mo.App.

1977). The use of the word 'shall', indicates "that the trial court must specifically decree a division of the marital property upon dissolution of the marriage." Id. If the trial court fails to divide the marital property, "judgment is not final, the jurisdiction is not exhausted, and the appeal must be dismissed." In re Marriage of Wineland, 609 S.W.2d 464, 466 (Mo.App. 1980).

■ In the present case, there was evidence at trial concerning the pension and retirement plans, earnings of $15,247.57 from the sale of cattle, and Husband's expenditure of funds from bank accounts. Regarding the cattle earnings and Husband's expenditure of funds, there was testimony that he used the money to pay marital bills, both parties' debts, to support himself, and to pay Wife's temporary maintenance. Knowing the specifics of these payments and transactions is made more difficult by the fact that Husband does most of his transactions in cash, or with money orders, as he and Wife had done during the marriage. However, there was evidence by way of Husband's testimony, of where the money went. He also testified that he did not conceal or waste assets. If a trial court finds that a marital asset has been squandered, it may order reimbursement. Lawrence v. Lawrence, 938 S.W.2d 333, 338 (Mo.App.1997). "The party alleging that another party squandered property must present evidence of it or no finding of squandering will result." Id. In the case at bar, the husband testified as to how the funds were spent, and the "trial court was at liberty to believe or disbelieve the husband's explanation that he used the funds to pay marital expenses." Bland v. Bland, 652 S.W.2d 690, 692 (Mo.App.1983). Therefore, the trial court did not err in not including in the marital property division the spent funds from the joint bank accounts, and from the sale of cattle.

■ Appellant also contends that the trial court erred in failing to distribute

Husband's two pension and retirement plans from Hubbell (formerly A.B. Chance), which assuming no further contributions, would yield monthly benefits at age 65, of $84.38 and $148.35. Husband has worked for Hubbell for many years, but besides the facts stated above which assume retirement at 65 and no further contributions, there was no other evidence presented regarding these retirement plans. Appellant contends that because Husband "raised no objection or contention that these plans were in part nonmarital by reason of service pre-dating the marriage, it may fairly be inferred that the full plan benefits are marital ... " However, in a court tried case, a reviewing court must view the evidence, and the reasonable inferences thereof, in the light most favorable to the result. *Liberty v. Liberty*, 826 S.W.2d 381, 383 (Mo.App. 1982). And, "[w]here the trial court made no specific finding of fact, [this court] consider[s] that fact found in accordance with the result reached." *Id.;* Rule 73.01(a)(3). In the present case, the trial court did not include the pension and retirement funds in the marital property distribution and made no specific findings of fact regarding these items. Therefore, this court is required by Rule 73.01(a)(3) to presume that the fact issues were found "in accordance with the result reached." Point IV denied.

■ In Appellant's fifth point, she contends that the trial court erred in its division of marital property because it included in her share a 1990 Ford Tempo, which was not owned by either party. She requests that Husband be required to pay her $2,000 in cash (half the value of the car), "to preserve the intended proportionality of the property division."

Both parties agree that Wife does not own the car; she borrows it from her daughter-in-law, whose name is on the title. Appellant cites in her brief, *Bullard v. Bullard*, 929 S.W.2d 942, 946 (Mo.App. 1996), which states that a "trial court does not have jurisdiction to enter a decree dividing property not owned by either

spouse," and such property "is not relevant to the property division ... ." Because neither party in this case has ever owned the Ford Tempo, the court erred in distributing it as marital property. The judgment is therefore modified to exclude the car.

As to Appellant's request that Respondent be ordered to pay half of the value of the car in question, this court disagrees. "Section 452.330 does not require the division of property to be equal, only fair and equitable." *Lance v. Lance*, 979 S.W.2d 245, 252 (Mo.App.1998). The trial court did not state in its findings that it intended the distribution of property to be equal; this court cannot "preserve the intended proportionality of the property division," when there was no statement of the trial court's intention. *Cf. Welsh v. Welsh*, 869 S.W.2d 802 (Mo.App.1994)(court subtracted miscalculated value from Husband's share of marital property before dividing assets into equal shares, where trial court specifically stated its intention to divide property into approximately equal shares).

■ An error in classifying property is not necessarily prejudicial error. *In re Marriage of Perkel*, 963 S.W.2d 445, 452 (Mo.App.1998); *Spidle v. Spidle*, 853 S.W.2d 311, 316 (Mo.App.1993). This Court is not to reverse a judgment unless error was committed against the Appellant materially affecting the merits of the action. Mo. Sup.Ct. Rule 84.13(b). "The erroneous characterization of property requires reversal of the order dividing marital property if the error materially impacts the overall distribution of the marital property." *Halupa v. Halupa*, 943 S.W.2d 272, 278 (Mo.App.1997). In the present case, this court does not find that the Tempo valued at $4,000 materially impacted the overall distribution of marital property, in light of the fact that over $200,000 in property was distributed between the two parties.

E.  Attorney's Fees

■ In her sixth and final point, Appellant contends that the trial court erred in failing to award her attorney's fees. She claims that her husband has greater financial resources than she does and that because she is currently unemployed and unemployable, she is unable to pay her attorney's fees and still support herself.

■ "As a general rule, the parties to a dissolution are to pay their own attorney's fees." *Rich v. Rich*, 871 S.W.2d 618, 627 (Mo.App.1994). "The court has broad discretion in awarding or denying attorney's fees, and its ruling will only be disturbed on appeal upon a showing of abuse of discretion." *Id.* The appellate court will not overturn the trial court's order absent a "showing that the trial court abused its broad discretion in ordering, or refusing to order, one party to pay the attorney's fees of the other party." *L.A.L. v. L.L.*, 904 S.W.2d at 55. The burden of demonstrating an abuse of discretion is on the complaining party, who must "show that the order for attorney's fees is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and to indicate a lack of deliberation." *Id.*

Appellant argues that she will not be able to support herself and pay her attorney's fees and medical bills because she is unable to work. Further, she argues that to pay the fees she would have to the property she was awarded, which would reduce the principal, thereby reducing the dividends, leaving her unable to support herself. She suggests that this court should extend to attorney's fees, the line of cases which hold that "a spouse is not required to dispose of her assets or consume marital property before she would be entitled to maintenance." *Johnson, v. Johnson*, 671 S.W.2d 426, 428 (Mo.App. 1984); see also *Kinder v. Kinder*, 777 S.W.2d 339, 342 (Mo.App.1989). This issue need not be addressed because the trial court specifically found that Wife was capable of working.

The record indicates that Husband and Wife were awarded roughly equal portions of the marital property, with wife receiving stocks and mutual funds with a total value of over $83,000. Wife also received $1,050 in cash from the sale of timber, maintenance, and an individual retirement account. The trial court also held that Wife is capable of working. Point six denied.

The judgment is modified to specify that the maintenance award shall be modifiable and to exclude the award of the Ford Tempo to Wife. In all other respects, the decree is affirmed.

All Concur.