Pamela McCarley LLANA, Appellant,

v.

Angelo Antonio LLANA, Respondent.

No. WD 61317.

Missouri Court of Appeals, Western District.

Dec. 2, 2003.

Gail Berkowitz–Gifford, Kansas City, MO, for Appellant.

Ronald R. Holliday, St. Joseph, MO, for Respondent.

Before ELLIS, C.J., LOWENSTEIN and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

This is an appeal from a dissolution of marriage. The facts adduced at trial favorable to the judgment are as follows:

The parties to the dissolution, Dr. and Ms. Llana were married in 1989. Two children were born of the marriage: Chandler, born in 1992, and Schaefer, born in 1996.

The appellant, Ms. Llana, received a degree in medical technology in 1981. Prior to the marriage, Ms. Llana worked as a pharmaceutical representative, earning $40,000–50,000 per year.[1] Her job required her to travel extensively from Monday through Thursday. She continued working in this capacity until shortly after the birth of the parties' first child. Ms. Llana has not been employed since 1992. Ms. Llana also has not received any significant training or education since she left the workforce.

Dr. Llana graduated from medical school in 1986 and completed his residency in 1989. Dr. Llana began working for Specialists of Internal Medicine in St. Joseph, Missouri, after completing his residency. In 1995, Specialists of Internal Medicine was purchased by Heartland Health Systems. Dr. Llana has been employed by Heartland Health Systems since 1995. Dr. Llana currently earns approximately $200,000 per year.

During the marriage, the family had an affluent standard of living. The parties lived in a home that was sold for over $600,000 after Ms. Llana filed for divorce; they drove expensive cars, which were frequently traded for newer cars; and they bought expensive jewelry and clothing.

In her petition, Ms. Llana requested, *inter alia*, maintenance and child support. On March 20, 2002, the trial court awarded Ms. Llana monthly maintenance and child support of $2500 and $2062, respectively, until January 2003.[2] However, the trial court ordered that monthly income of $2917 be imputed to Ms. Llana beginning January 2003. Accordingly, the trial court prospectively reduced the amount of maintenance and child support to $1100 per month and $1757 per month, respectively. In addition to the $1757 monthly child support, the court ordered Dr. Llana to pay eighty-five percent of all work-related child care expenses incurred by Ms. Llana. Ms. Llana has appealed.

## STANDARD OF REVIEW

Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court incorrectly declares or applies the law. *Stangeland v. Stangeland*, 33 S.W.3d 696, 700 (Mo.App.2000). The trial court has broad discretion in awarding maintenance, and its decision will not be overturned absent an abuse of discretion "where the award is such that it shocks the appellate court's sense of justice." *Id.* To determine whether the trial court abused its discretion, this court reviews the evidence in a light favorable to the decree, disregarding any evidence to the contrary and deferring to the trial court's judgment

---

1. Ms. Llana claims that she rarely made more than $35,000 per year. Also, she argues that the one year she made more than $50,000 was due to bonuses awarded by her company. However, Dr. Llana testified that she had made $40,000–50,000 per year.

2. The trial court ordered that payments were to be made retroactive to November 2002.

even if the evidence could support a different conclusion. *Id.* If there is a rational basis to support a decision to limit maintenance, that decision should be affirmed. *Judy v. Judy,* 998 S.W.2d 45, 50–51 (Mo. App.1999).

### MAINTENANCE

■ In her first point on appeal, Ms. Llana claims that the trial court erred in awarding her monthly maintenance beginning November 2001 in the amount of $2500 that was to be prospectively reduced to $1100 beginning January 2003. She argues that there was insufficient evidence for the trial court to conclude that she would be employed within ten months and earning $35,000 per year. Consequently, Ms. Llana asserts that it would be error for the court to prospectively decrease the maintenance award based on this conclusion.

The trial court concluded that Ms. Llana was able to immediately reenter the workforce. However, the court held that "she should have until January 1, 2003, to secure full time employment ... This will give [Ms. Llana] an additional ten months to re-enter the work force after an absence of approximately ten years." Ms. Llana claims that there is no credible evidence to support this finding.

■ The trial court should not prospectively decrease or terminate maintenance unless there is evidence or a reasonable expectation that the circumstances of the parties would be markedly different in the future. *Burrus v. Burrus,* 754 S.W.2d 882, 886 (Mo.App.1988). Ms. Llana earned a degree in medical technology from the University of Mississippi in 1981. Prior to the marriage, Ms. Llana worked as a pharmaceutical representative. She continued working as a sales representative for the first two years of the marriage. There was trial testimony indicating that Ms.

Llana earned $40,000–$50,000 per year. Ms. Llana's education and past work experience was sufficient evidence for the trial court to conclude that there was a reasonable expectation that she would be able to find employment. *Howsmon v. Howsmon,* 77 S.W.3d 752, 756 (Mo.App.2002).

Furthermore, it was well within the trial court's discretion to impute a present annual income of $35,000 to Ms. Llana, especially in light of testimony elicited at trial indicating that she had earned $40,-000–50,000 per year and that present entry-level positions at two different pharmaceutical companies pay in excess of $40,000 per year in base salary. There was testimony concerning employment opportunities open to Ms. Llana. A pharmaceutical sales representative working for Merck Pharmaceuticals testified that entry-level sales representatives with no previous experience earn $42,500 per year in base salary working for the company. The representative also indicated that such positions offer bonuses and a company car. He further testified that the company had in the past hired sales representatives after several years absence from the workplace. A second pharmaceutical sales representative working for Roche Laboratories, a pharmaceutical company, testified that an entry-level sales representative with the company receives an annual salary in the low to mid $40,000 range, a company car, and additional benefits. Finally, a human resources manager working for Heartland Health testified that she had spoken with Ms. Llana about career opportunities and that Ms. Llana had the minimum job qualifications for some of the positions offered by Heartland Health.

Ms. Llana attempts to minimize the impact of the testimony concerning her employability by pointing to the potential bias of the witnesses in favor of the respondent.

Two of the three witnesses derive a portion of their income from selling pharmaceutical products through prescriptions made by the respondent. However, it is well within the trial court's discretion to accept as true the testimony of these witnesses. *Judy*, 998 S.W.2d at 50.

Ms. Llana testified that she had not obtained employment and that none of the witnesses (or the respective companies for which they work) have offered her a position.[3] This was not a prerequisite for the court to find that the appellant is able to find gainful employment or to impute income to the appellant. The payor spouse should not be required to make higher maintenance payments, then seek a modification, simply because there is not an absolute certainty that the payee spouse will be self-sufficient. *Bixler v. Bixler*, 810 S.W.2d 95, 99 (Mo.App.1991).

■ Ms. Llana also states that she was unable to work, because she needed to stay home and care for her two children. First, spouses seeking maintenance have a duty to use their best efforts to seek employment. *Id.* Therefore, a spouse's personal desire to not work is irrelevant. Second, Ms. Llana's two children are old enough[4] and do not have any condition that requires Ms. Llana to provide constant care. Third, the children would not have required constant care because they would have started school several months before January 2003, the date by which Ms. Llana was to be employed and have income imputed to her.

Ms. Llana cites *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501 (Mo.App.1977), for the proposition that "stair-step" maintenance is improper. However, that case does permit such "stair-stepping" if there is evidence or a reasonable expectation that the parties will experience changed circumstances in the future. *Id.* at 505–06. Based on the evidence concerning Ms. Llana's education and prior experience as a successful pharmaceutical representative and the testimony concerning employment opportunities, the trial court had sufficient evidence to conclude that Ms. Llana could find work and earn $35,000 per year. The trial court did not engage in idle speculation as the appellant suggests. Consequently, this court affirms the portion of the trial court's judgment imputing income to Ms. Llana beginning January 2003 and to reduce the maintenance award to $1,100 per month based on the imputation of income.

■ In her second point on appeal, Ms. Llana also claims that the trial court erred in awarding an inadequate amount of maintenance, because the evidence did not support the monthly maintenance awards of $2500 and then $1100. First, she argues that her monthly expenses were in excess of $6000[5] and the ordered maintenance was insufficient to provide for her reasonable needs. Ms. Llana's claim is problematic. First, "[t]he credibility of witnesses is a matter that is within the sound discretion of the trial court, which can either accept or reject all, part or none

---

**3.** It is possible that Ms. Llana is unemployed partly through her own fault. The trial court found that Ms. Llana did not seriously seek employment while the divorce case was pending.

**4.** The oldest child would have been almost eleven years old by the time Ms. Llana was to reenter the workforce; the second child would have been over six years old.

**5.** Appellant's monthly expenses include, but are not limited to, the following: $1659 house payment, $245 lawn care and home maintenance, $95 water, $145 phone services, $550 food, $250 clothing, $300 recreation, $200 charitable donations.

of the testimony it hears." *Crews v. Crews*, 949 S.W.2d 659, 665 (Mo.App.1997). The trial court may even disbelieve testimony that is uncontradicted. *Hernandez v. Hernandez*, 872 S.W.2d 161, 165 (Mo. App.1994). Therefore, the trial court need not accept Ms. Llana's estimated monthly expenses as accurate. Second, the trial court found that the estimated expenses "exceed[ed] an amount required to meet the reasonable needs of [Ms. Llana] and the children." Even if the trial court had accepted Ms. Llana's estimated expenses and found that the amount was reasonable, the court is not required to award maintenance to cover all of her needs even if her husband has the resources to provide the additional support. *Bixler*, 810 S.W.2d at 100. It is not necessarily an abuse of discretion merely because the court awards maintenance insufficient to cover all of the needs of the spouse seeking support. *Judy*, 998 S.W.2d at 51.

Ms. Llana also claims that the court erred when it determined the amount of maintenance awarded without making a determination of her reasonable needs. Similarly, Ms. Llana asserts that the trial court erred when it did not quantify the income generated by the marital property awarded to her and, therefore, did not consider her true income. This court has affirmed a maintenance award despite the fact that the trial court failed to make any finding regarding the appellant's income or expenses. *Stangeland*, 33 S.W.3d at 701–03; *Ansley v. Ansley*, 15 S.W.3d 28, 32–33 (Mo.App.2000). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). Therefore, this court cannot say that the trial court in this case erred in not making an express determination of Ms. Llana's reasonable needs or her income generated from marital assets.

■ Considering the amount of support to be received by Ms. Llana,[6] this court cannot say that the maintenance award was unreasonable or an abuse of discretion that would shock the conscience of the court. There is no evidence that the trial court failed to consider all relevant factors set forth by Section 452.335.2,[7] including the standard of living and the duration of

---

6. Each month, Ms. Llana will receive $2500 in maintenance. Calculated over a twelve-month period, Ms. Llana will receive $30,000 in maintenance payments. Beginning January 2003, the monthly maintenance payments will be reduced to $1100. Calculated over a twelve-month period will receive $13,200. Combining this amount with the $35,000 in imputed income, Ms. Llana will have $48,200 annually for her reasonable needs. These amounts do not account for any of the children's needs. The children's needs will be provided for by the child support awarded.

7. The relevant factors include:
(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
(3) The comparative earning capacity of each spouse;
(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
(6) The duration of the marriage;
(7) The age, and the physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.

the marriage. In determining a just amount to award as maintenance, the standard of living is but one factor to be balanced against the other relevant factors. However, the standard of living is of particular importance where the marriage is of long duration. *Weiss v. Weiss,* 702 S.W.2d 948, 956 (Mo.App.1986). This court would note, however, that an excessive or high standard of living is not necessarily the same as reasonable needs. *Baldwin v. Baldwin,* 905 S.W.2d 521, 525 (Mo.App.1995) (Although the parties were married for nearly twenty-eight years, the court denied the wife's request to increase the maintenance award to closer approximate the standard of living established during the marriage.).

▮ The trial court erred in finding that the marriage was not of long duration despite noting that Mr. and Ms. Llana were married for thirteen years. This court has held that a marriage of eleven years was of "somewhat" long duration. *Colquitt v. Muhammad,* 86 S.W.3d 144, 151 (Mo.App.2002). This court cannot conclude that this determination was harmless error. Although the trial court considered the relevant statutory factors in determining the maintenance award, it is conceivable that it would have given more weight to the standard of living and awarded additional maintenance if it had properly characterized the marriage as being one of long duration. Therefore, the cause is remanded to the trial court for the sole purpose of reconsidering the amount of maintenance to be awarded in light of the fact that this was a marriage of long duration.

## CHILD SUPPORT

▮ In her third point on appeal, Ms. Llana claims that the trial court erred in

decreasing the amount of child support she would receive beginning January 2003. The trial court originally awarded her $2062 per month as calculated under Form 14. The court also completed a second Form 14 using income imputed to her. The second form was effective January 2003 and set the monthly child support amount as $1,757. Ms. Llana argues, as she did regarding the automatic decrease in the maintenance award, that there was insufficient evidence for the trial court to conclude that she would be employed by January 2003 and earning $2917 per month. Consequently, she asserts that the trial court erred in using the imputed income amount in calculating the second Form 14.[8]

▮ Child support orders issued by the trial court will be affirmed unless there is no substantial evidence to support the order, it is against the weight of the evidence, or the trial court incorrectly declares or applies the law. *Smith v. Smith,* 94 S.W.3d 394, 396 (Mo.App.2003). The evidence is reviewed in a light favorable to the judgment and deference is given to the trial court's credibility determinations. *Id.* If the evidence supports the child support order, this court may overturn the trial court's judgment only if there has been an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court awards child support that is "against the logic of the circumstances" or is "arbitrary or unreasonable." *Id.*

The trial court has discretion to impute income to unemployed or underemployed custodial parents in completing a Form 14 calculation. *Stanton v. Abbey,* 874 S.W.2d 493, 499 (Mo.App.1994). The Form 14 instructions state:

> based on the automatic reduction in future maintenance, such that this court need not address that issue in this review.

---

**8.** The appellant does not challenge on appeal the propriety of the trial court's automatic modification of the future child support,

When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:

(1) the parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(2) the parent's occupational qualifications;

(3) the parent's employment potential;

(4) the available job opportunities in the community; and

(5) whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, LINE 1, CMT. H IN DIRECTIONS.

Ms. Llana argues that the trial court did not consider her lengthy absence from the workforce when it imputed income to her. However, this is not true—the court recognized that Ms. Llana had been unemployed and served as a stay-at-home mom for the past ten years. Ms. Llana also emphasizes the portion of the directions stating that the court should consider a parent's work history during the three years prior to the proceeding in determining probable earnings. However, this is only one factor to be balanced against the other four factors, and the statute expressly states that the court may consider any other relevant time period. Ms. Llana also argues that she does not possess the necessary qualifications to seek appropriate employment and, therefore, has little employment po-

tential. As stated above, there was ample evidence for the trial court to conclude that Ms. Llana would be able to support herself through appropriate employment. Additionally, the court allowed Ms. Llana ten months before income was to be imputed. If Ms. Llana believed that she did not have the necessary skills to return to the workplace, she could have used this "grace" period to obtain additional training. Therefore, the trial court did not abuse its discretion when it imputed income to Ms. Llana in its Form 14 calculations and ordering a decrease in child support payments effective January 2003.

■■■■■ Ms. Llana also claims that the trial court erred in not determining an actual amount of work-related childcare costs in completing Form 14 and by awarding her eighty-five percent of all work-related childcare costs incurred by her. She cites *In re Marriage of Douglas*, 870 S.W.2d 466 (Mo.App.1994), where the trial court erred in awarding one-half of all work-related child care costs to the mother without calculating the actual amount of expense that would be incurred. A court "must either award child support in conformity with the result obtained by using Form 14 or make a finding on the record that an award of such amount . . . is unjust or inappropriate." *Id.* at 470–71. However, the instructions allow the court to exclude work-related childcare costs from the Form 14 calculations if an event that would significantly affect such costs will occur with predictability within a short period of time. DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 6a, Cmt. A. An example of such an event is where a child will begin attending school, as is the case here where the two children will start school in the fall. In these situations, the court may instead order the obligor parent to pay a percentage of any work-related childcare

costs incurred by the other parent. Therefore, the trial court did not commit any reversible error in making the child support award.

CONCLUSION

The cause is remanded to the trial court for the sole purpose of reconsidering the amount of maintenance to be awarded in light of the fact that this was a marriage of long duration; if the trial court deems it appropriate after reconsideration, it may modify its judgment to increase the maintenance award. In all other aspects, the judgment is affirmed.

All concur.