KURT S. ODENWALD, Judge
Introduction
Robert V. Fox, Sr. ("Husband") appeals from the trial court's judgment, dissolving his marriage to Ying Huang Fox ("Wife"), dividing the parties' marital property, and ordering him to pay maintenance. On appeal, Husband asserts that the trial court erroneously considered Wife's physical and emotional condition in granting maintenance. Husband also contends that the trial court erred because it failed to factor the short duration of the marriage when computing maintenance and awarding Wife a marital interest in the parties' residence, which Husband acquired prior to the marriage.
The trial court properly considered evidence of Wife's physical and mental condition when awarding maintenance. Moreover, we are not persuaded that the length of the parties' marriage required a reduction in the maintenance award. Nor are we convinced that the trial court erred in finding that the equity accrued on the parties' residence during the marriage was marital property, and not the separate property of Husband. Accordingly, we affirm the trial court's judgment.
Factual and Procedural History
Husband and Wife met online through a dating website. Husband resided in the United States. Wife resided in China with her daughter ("Daughter") from a previous relationship. After meeting several times in person, Husband brought Wife to the United States, and they married in January 2009. Husband, Wife, and Daughter settled in St. Charles, Missouri.
While in China, Wife worked as an assistant to a stockbroker and attended a few night classes in accounting. After moving to the United States, Wife initially was unemployed. Because Wife's command of English was very limited, she attended English classes at a local community college. Wife later obtained part-time work in an Asian gift shop in 2011, but the shop closed in 2014. Subsequently, Wife unsuccessfully applied to work for an outlet store. Wife claimed that she struggled to find employment because of her inability to understand English and her physical and emotional condition. Specifically, Wife testified that she was often dizzy, felt spinning sensations, suffered from headaches, and experienced emotional instability.
Prior to the marriage, Husband worked for the United States military. After he retired, Husband received a net monthly military pension and disability payment of $1755. During the marriage, Husband frequently worked overseas for private companies, providing security services for foreign mining interests. Husband often spent nine or ten months a year in Indonesia. Although Husband experienced a period of unemployment, when employed he averaged *781 an annual salary of $150,000. In 2016, Husband obtained a new security contract paying him approximately $135,000 annually.
Husband deposited both his salary and military pension in the same Bank of America checking account. After depositing the money, Husband paid the parties' joint bills and most of Wife's bills. Husband also regularly transferred money from the Bank of America checking account to Wife's bank account as her "allowance." Husband did not provide Wife with access to his checking and saving accounts and deterred her from acquiring a credit card. However, Husband provided Wife with many gifts and arranged expensive vacations.
Prior to the marriage, Husband purchased a house ("the Residence") in St. Charles for $113,000. Husband obtained a mortgage on the property, which he refinanced in 2002. Upon their marriage, the parties lived at the Residence. At that time, Husband owed $87,700 on the mortgage. While Husband worked overseas, Wife purportedly maintained the Residence by cleaning it, mowing the lawn, and tending the property. The parties renovated a bathroom and resurfaced the driveway during the marriage. The mortgage was paid solely from Husband's Bank of America checking account. In November 2015, an appraiser valued the Residence at $115,000. At dissolution, the balance remaining on the mortgage was $26,833.
Husband filed for dissolution of the marriage in May 2015. Shortly thereafter, the trial court entered a pendente life judgment awarding Wife monthly maintenance of $1600. During the dissolution proceedings, Husband asked the trial court to award Wife no maintenance. Wife requested $3600 in monthly maintenance. Husband listed his reasonable monthly expenses at approximately $3000. Wife alleged that her reasonable monthly expenses were $5115. Husband indicated that his total net income was $14,255.36 during the months that he worked. Wife claimed no amount of regular income at dissolution. Husband acknowledged that he had significant discretionary monthly income.
Husband procured a vocational expert to testify at trial about Wife's employment opportunities. The witness testified that Wife could obtain a low-wage position as a cashier, dishwasher, fast-food worker, housekeeper, kitchen helper, night auditor, sales clerk, server, short-order cook, or waitress, despite her limited ability to communicate in English. The witness never interviewed Wife, nor did the witness contact any potential employers to determine Wife's capability to work given her communication issues. Although the witness admitted that, at the time of trial, Wife likely was limited to low-wage positions, the witness opined that Wife could obtain employment as an accounting clerk in the future.
The trial court entered judgment in September 2016, dissolving the marriage, dividing the parties' marital property, and awarding Wife $2600 in monthly maintenance. In its judgment, the trial court concluded that Wife had insufficient income-producing property to provide for her reasonable needs and could not meet her needs through appropriate employment. The trial court rejected Wife's claimed expenses of $5115, and determined that Wife's reasonable monthly expenses were around $4000. The trial court also found that Husband had sufficient discretionary income to pay maintenance.
In contrast, the trial court stated that Wife had limited income at her disposal. Although Wife was unemployed, the trial court determined that "[t]here was no medical evidence produced to support a finding that Wife suffered from a condition *782 which reduced her capacity to become employed full time." According to the trial court, however, Wife could only achieve a minimum-wage, full-time job because of her inability to speak English proficiently and her limited job training. Further, the trial court commented that Wife was "not completely settled emotionally or physically to engage in any form of employment above minimum wage and even that is speculative at this point." The trial court rejected the testimony of Husband's vocational expert, reasoning that the witness never interviewed Wife or any potential employer.
The trial court also addressed the parties' standard of living. The trial court found that Husband provided a good standard of living throughout the marriage. The trial court reasoned that Wife did not embellish her standard of living because she lacked access to any money other than her monthly "allowance" or Husband's gifts. The trial court concluded that Wife required maintenance and that Husband had the ability to pay such an award. After considering the statutory factors, the trial court ordered Husband to pay Wife $2600 monthly in modifiable maintenance to contribute to her reasonable needs of $4000.
Regarding the division of marital property, the trial court determined that the mortgage on the Residence was $87,700, when the parties married; at trial, the mortgage balance was $26,833.50. Thus, the equity accrued on the Residence during the marriage was $60,866.50. The trial court found that the parties issued mortgage payments from Husband's Bank of America checking account, where Husband regularly deposited both his salary and his military pension. The trial court found that Husband commingled the deposits in his Bank of America checking account. Therefore, the trial court found a marital interest in the equity accrued via the mortgage payments made on the Residence. The trial court divided the $60,866.50 in accrued equity equally, ordering Husband to pay Wife $30,433.25. Additionally, the trial court determined that Husband provided no direct evidence that he used only separate funds to pay for any renovations to the Residence.
Husband then filed a motion for new trial, charging the trial court with error for improperly relying upon evidence of Wife's medical condition to determine the amount of maintenance, for failing to consider the length of marriage in awarding maintenance, and for finding that the equity accrued on the Residence was marital property. The trial court never entered an order addressing the motion for new trial. After the judgment became final, Husband appealed.
Standard of Review
We review a judgment dissolving a marriage under the standard established by Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Cureau v. Cureau, 514 S.W.3d 685, 689 (Mo. App. E.D. 2017). Accordingly, we must affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Id. (referencing Murphy, 536 S.W.2d at 32 ). We accept "as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregard[ ] all evidence and inferences to the contrary." Landewee v. Landewee, 515 S.W.3d 691, 694 (Mo. banc 2017). Although we defer to the trial court's factual determinations, we review any pertinent issues of law de novo. Moore v. Moore, 484 S.W.3d 386, 389 (Mo. App. W.D. 2016). The burden of establishing trial-court error lies with the party challenging the divorce decree. Landewee, 515 S.W.3d at 694.
*783 The trial court has broad discretion in awarding maintenance and dividing marital property. Cureau, 514 S.W.3d at 689. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable that it shocks one's sense of justice and indicates a lack of careful consideration. Id.
Points on Appeal
Point One claims that the trial court erroneously considered Wife's physical and emotional condition in awarding maintenance. Point Two argues that the trial court erred by failing to factor in the marriage's duration in computing maintenance. Point Three asserts that the trial court erred in granting Wife a portion of the accrued equity in the Residence.
Discussion
Husband challenges the trial court's award of maintenance to Wife and its division of marital property. Because Points One and Two both focus upon the maintenance award, we will first explain the statutory provisions regarding maintenance, and then address the substantive arguments of Points One and Two. Then we will discuss the statutory provisions regarding the division of marital property before resolving Point Three.
I. The Maintenance Award
A. Statutory Provisions Regarding Maintenance
Section 452.335.1[1] authorizes a trial court to award maintenance if it determines that the requesting spouse: "(1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and (2) is unable to support herself through appropriate employment." Sheerin v. Sheerin, 475 S.W.3d 704, 707 (Mo. App. E.D. 2015). After considering the threshold requirements of Section 452.335.1 and finding that a maintenance award is appropriate, the trial court must weigh the following factors in determining the amount and duration of maintenance:
(1) The financial resources of the party seeking maintenance, including marital property apportioned to [her], and [her] ability to meet [her] needs independently;
(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
(3) The comparative earning capacity of each spouse;
(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property apportioned to [her] and the separate property of each party;
(6) The duration of the marriage;
(7) The age and physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.
Id. (quoting Section 452.335.2). The trial court must award an amount of maintenance it deems just after carefully considering the Section 452.335.2 factors. Arndt v. Arndt, 519 S.W.3d 890, 900 (Mo. App. E.D. 2017). The trial court should apply *784 the above factors so as to balance the reasonable needs of the maintenance-requesting spouse against the ability of the paying spouse to provide. Sheerin, 475 S.W.3d at 707. "Again, the trial court has considerable discretion in determining the amount of the maintenance award." Valentine v. Valentine, 400 S.W.3d 14, 22 (Mo. App. E.D. 2013).
B. Point One-Wife's Physical and Emotional Condition
Point One criticizes the trial court's consideration of Wife's physical and emotional condition and its finding on how her condition impacted her ability to obtain employment. Specifically, Point One proffers three contentions: (1) the trial court made inconsistent findings regarding Wife's physical and emotional condition; (2) the trial court improperly relied on speculative testimony about Wife's purported medical conditions; and (3) the trial court's maintenance award essentially absolved Wife of any affirmative duty to seek full-time employment. We find each of these three contentions unavailing.
First, Wife alleged experiencing headaches, dizziness, and emotional stress, which affected her employment opportunities. The trial court found that "[t]here was no medical evidence produced to support a finding that Wife suffered from a condition which reduced her capacity to become employed full time." Subsequently, the trial court concluded that Wife was "not completely settled emotionally or physically to engage in any form of employment above minimum wage and even that is speculative at this point."
The trial court's separate findings are not inconsistent. The trial court determined that Wife was able to work full-time, despite her allegations and testimony to the contrary. Wife received $2600 in maintenance to help reach her reasonable needs of $4000, which implicitly imputed to her $1400 in monthly income.[2] However, the trial court found that Wife's circumstances, at the time of trial, would not allow Wife to acquire employment substantially above a minimum-wage level. This finding was supported by differing factors, including Wife's inability to speak English proficiently, her limited job training, her current unemployment, and her sparse work history. The trial court also considered Wife's physical and emotional state when considering whether she could work substantially above a minimum-wage level. Thus, the trial court clearly determined that Wife suffered from no medical condition preventing full-time employment, but Wife's physical and emotional condition, as one of many factors, barred her from high-wage positions.
Husband offers Maninger v. Maninger (In re Marriage of Maninger), 106 S.W.3d 4, 12 (Mo. App. E.D. 2003) in support of his contention that the trial court issued inconsistent findings which necessitate reversal of its judgment. In Maninger, the wife, through her own testimony and her physician's testimony, presented evidence that her poor health prevented her continued secondary employment. 106 S.W.3d at 8, 11. We reversed and remanded because the trial court made inconsistent findings regarding whether or not the trial court accepted the testimony from the wife and her physician that her poor health rendered her secondary employment inappropriate. Id. at 12. We reasoned that the amount of the trial court's maintenance award was excessive if the trial court included her secondary-employment income in computing maintenance, but insufficient if the trial court excluded her secondary-employment *785 income in calculating maintenance. Id.
Unlike Maninger, the trial court here clearly rejected part of Wife's allegations and determined that she could work full-time to meet her reasonable needs. But the trial court also rejected, for various reasons, Husband's assertion that Wife could find employment above a low-wage position. The record does not contain inconsistent findings or conclusions regarding whether the trial court credited Wife's evidence. Finding no inconsistency in the trial court's judgment, we reject Husband's first contention.
Second, we are not persuaded that the trial court relied on speculative evidence regarding Wife's condition in determining whether she could obtain full-time employment substantially above a minimum-wage level. Husband relies on Abney v. Abney, 575 S.W.2d 842, 844 (Mo. App. St. Louis 1978) for the proposition that the trial court cannot rely on speculative evidence of medical conditions in determining a spouse's employment opportunities. Abney provides no guidance in this matter because the facts of Abney are distinguishable from the facts presented in this appeal.
In Abney, the wife endured brain surgery prior to the dissolution proceeding. 575 S.W.2d at 843. Although she experienced significant injuries, the wife returned to work and received regular pay increases. Id. at 843-44. The trial court awarded the wife maintenance, even though the wife presented no evidence of her present condition or its impact on her future employment opportunities. Id. We determined that "[m]ere suppositions of future inability to work" are insufficient, and, on the record presented, we could not determine whether the wife's injuries had a "substantial potentiality" of preventing her continued employment. Id. at 844. We reversed and remanded for further evidence. Id. at 845.
Contrary to the facts of Abney, Wife testified and alleged that she was currently unable to work, at any level, due to her dizziness, headaches, spinning sensations and emotional instability. Wife, unemployed at the time of trial, explained ongoing issues that prevented her from achieving employment. The circumstances presented here differ substantially from the facts in Abney, where the wife was gainfully employed and presented no evidence that her significant injuries affected either her current or future employability. See id. at 843-44.
The core of Husband's argument charges the trial court with error for considering Wife's condition without receiving any expert medical testimony. However, it is well established that the trial court may properly accept detailed testimony from a party claiming that he or she is unable to work due to his or her physical or emotional condition, even in the absence of testimony from medical experts. Compare Allen v. Allen, 927 S.W.2d 881, 889-90 (Mo. App. W.D. 1996) (explaining that the trial court did not err in crediting spouse's testimony that she suffered from "crying jags, insomnia, and panic attacks which affect[ed] her ability to hold a job," even though no medical expert testified as to her condition), with Liljedahl v. Asner (In re Liljedahl), 942 S.W.2d 919, 924-25 (Mo. App. S.D. 1996) (explaining that the trial court erred in finding that the wife was unable to support herself when she offered only conclusory testimony that her emotional condition prevented her employment and did not provide any facts that would enable the court to assess the severity of her purported disorders).
We further note that Wife's testimony regarding her physical and emotional condition was not the sole basis for the trial *786 court's conclusion that Wife suffered limited employment opportunities post-dissolution. The record contains evidence that Wife, a Chinese resident, moved to the United States to marry Husband. Wife's ability to speak English, although improving, remained limited and precluded her from acquiring any jobs requiring substantial English communication. Wife had limited job training and a very sparse work history within the United States: Wife only worked sporadically part-time for an Asian gift store. Even Husband's vocational expert admitted that Wife was likely restricted to low-wage jobs at the time of trial and any higher-paying positions were merely aspirational. Instead, Wife spent the majority of the marriage maintaining the Residence for the parties. The record overwhelming reinforces the trial court's finding that Wife experienced only low-wage employment opportunities.
We also reject Husband's third contention. The trial court did not absolve Wife from contributing to her own reasonable needs. To assist in meeting his or her reasonable needs, a party has an affirmative duty to seek full-time employment after the marriage's dissolution. Greiner v. Greiner, 146 S.W.3d 442, 450 (Mo. App. W.D. 2004). To that end, "[t]he trial court can impute income to a spouse seeking maintenance according to what she could earn using her best efforts to gain employment suitable to her capabilities." Alberty v. Alberty, 260 S.W.3d 856, 861 (Mo. App. W.D. 2008). Here, the trial court found that Wife could obtain and hold employment in an attempt to support her reasonable needs. The trial court determined Wife's monthly reasonable needs to be $4000, yet awarded only $2600 in maintenance. The trial court's judgment required Wife to obtain through employment the additional $1400 a month needed to meet her reasonable needs.
The record shows that the trial court carefully considered and analyzed the evidence before it in light of the Section 452.335.2 factors. Given the circumstances of the parties and their respective employment opportunities, the amount of the maintenance award was reasonable, and we find no error warranting relief. We deny Point One in its entirety.
C. Point Two-Duration of Marriage
Husband next maintains that the ongoing monthly maintenance award of $2600 was unreasonable due to the short duration of the marriage (six-and-a-half years).[3] Husband contends that the trial court failed to account for this factor and, as a result, placed undue emphasis on the parties' standard of living. We disagree.
Contrary to Husband's point, "there are no Missouri cases holding that the duration of marriage is the controlling factor in setting the amount of maintenance." Craig-Garner v. Garner, 77 S.W.3d 34, 39 (Mo. App. E.D. 2002). Rather, maintenance is designed to close the gap between the maintenance-receiving spouse's income and his or her reasonable monthly expenses. Workman v. Workman, 293 S.W.3d 89, 98 (Mo. App. E.D. 2009) ; Calhoun v. Calhoun, 156 S.W.3d 410, 416 (Mo. App. S.D. 2005). As a result, a maintenance award may be appropriate in marriages of varying degrees of duration. See, e.g., *787 Roche v. Roche, 289 S.W.3d 747, 757 (Mo. App. E.D. 2009) ; Craig-Garner, 77 S.W.3d at 39. To that end, "[t]he duration of the marriage is but one factor of many to be considered." Craig-Garner, 77 S.W.3d at 39 ; see Roche, 289 S.W.3d at 749-51, 757 (finding that a four-and-a-half-year marriage was "relatively short," but still affirming an indefinite maintenance award); Garrison v. Garrison, 255 S.W.3d 37, 42 (Mo. App. W.D. 2008) (commenting that the paying spouse failed to establish his proposition that a maintenance award of unlimited duration is unwarranted in a case of a short marriage).
Husband cites Llana v. Llana, 121 S.W.3d 286, 291-92 (Mo. App. W.D. 2003) in support of his argument that we should reverse because the trial court failed to properly consider the length of the marriage. In Llana, the Western District reversed and remanded because the trial court improperly characterized the parties' thirteen-year marriage as "not of long duration." Id. at 292. The Western District concluded that this improper characterization was not harmless error as the parties' standard of living is "of particular importance" when the marriage is "of long duration." Id. According to the Western District, the trial court may have given more weight to the parties' standard of living-and awarded more maintenance-if it had properly characterized the marriage as of a longer duration. Id. at 291-92.
Liana does not require reversal. Unlike Llana, the trial court here did not improperly characterize the duration of the marriage. And, the duration of the marriage was not so short here as to require any reduction of the maintenance award. See Roche, 289 S.W.3d at 757 ; Garrison, 255 S.W.3d at 42. Nor did the trial court place undue emphasis on any of the statutory factors. Husband offers no precedent which precludes the trial court from factoring in the parties' standard of living in the maintenance award unless the marriage is "of long duration."
Given the documented circumstances of this case, we agree that the trial court properly reviewed and emphasized the parties' standard of living. Husband brought Wife to the United States. Wife struggled with English, and either worked part-time or was unemployed throughout the marriage. Husband completely controlled the parties' finances and firmly fixed the parties' standard of living during the entirety of the marriage. Specifically, Husband determined the amount and provided Wife a monthly allowance; Husband paid the parties' expenses; and Husband bought Wife expensive gifts and took Wife on numerous vacations at his sole discretion. Given his many years of complete dominance and control over the parties' finances, we are not persuaded that the trial court erred in its consideration of the parties' standard of living.
Overall, Wife lacks the means to earn sufficient income to satisfy her reasonable needs, whereas Husband has significant disposable income, even after his reasonable monthly expenses. The maintenance award of $2600 a month was appropriate in light of all the Section 452.335.2 factors. Point denied.
II. The Division of Marital Property
A. Statutory Provisions Regarding the Division of Marital Property
Section 452.330.1 governs the disposition of property in a divorce proceeding. Pollard v. Pollard, 401 S.W.3d 506, 511 (Mo. App. W.D. 2013). Under Section 452.330.1, the trial court shall set apart to each spouse such spouse's non-marital property and shall divide the marital property and marital debts in a manner that the trial court deems just after considering all relevant factors including:
*788 (1) The economic circumstances of each spouse at the time the division of property is to become effective ...;
(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
(3) The value of the nonmarital property set apart to each spouse;
(4) The conduct of the parties during the marriage; and
(5) Custodial arrangements for minor children.
Section 452.330.1: see also Seggelke v. Seggelke, 319 S.W.3d 461, 464-65 (Mo. App. E.D. 2010). "However, the trial court may attach the amount of weight to each of these it deems appropriate, and these factors are not exclusive." Seggelke, 319 S.W.3d at 465 (quoting Skaggs v. Skaggs, 301 S.W.3d 72, 76 (Mo. App. S.D. 2009) ). The trial court is vested with considerable discretion it its classification of property as marital or non-marital. Bowman v. Prinster, 384 S.W.3d 365, 372 (Mo. App. E.D. 2012).
B. Point Three-Wife's Interest in the Residence
Husband contends that the trial court erred in awarding Wife any of the accrued equity in the Residence. Specifically, Husband argues that he used separate property-not marital property-to pay for the reduction in the Residence's mortgage; thus, the trial court erred in awarding Wife any of the equity accrued during the marriage.
As a general principle, property owned by one spouse prior to the marriage will remain non-marital property and will be awarded to the owner of that property. Goodwin v. Goodwin, 263 S.W.3d 703, 706 (Mo. App. W.D. 2008). Thus, property is usually considered non-marital if a spouse owned it before the marriage and retained title to it. Beckham v. Beckham, 41 S.W.3d 908, 912 (Mo. App. W.D. 2001). However, "[a]ny increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase." Selby v. Selby, 149 S.W.3d 472, 484 (Mo. App. W.D. 2004). This increase in value includes any equity accrued by the reduction of a property's mortgage if the parties used marital funds for the payments. See Milne, 138 S.W.3d at 165 (explaining that "[b]ecause marital funds contributed to an increase in equity in the property, the court properly granted the marital estate an interest in the property."). As a result, a spouse is entitled to a marital interest in the property proportionate to the increase in the property's equitable value as obtained through marital funds. See McKown v. McKown, 108 S.W.3d 180, 184-85 (Mo. App. W.D. 2003).
Husband acquired the Residence before the marriage and titled the Residence in his name only. The parties paid the mortgage from Husband's Bank of America checking account. The balance on the Residence's mortgage was $87,700 at the time of the marriage and the balance at trial amounted to $26,833.50. Husband concedes that he deposited both his salary and his military pension that he received during the marriage into his Bank of America checking account. Husband contends that he used only his military pension, which was earned before the marriage, to pay the mortgage each month. However, the record shows that Husband deposited his military pension into the same Bank of America checking account in which he deposited his salary. Accordingly, the issue is whether the trial court erred in finding that the commingling of Husband's military pension with his current salary rendered the funds used to pay the mortgage during the marriage to be marital property.
*789 Husband earned the military pension before the marriage and the trial court considered it separate property. See Garrison, 255 S.W.3d at 42-43. In contrast, other income deposited by Husband into the Bank of America checking account, specifically his salary earned during the marriage, largely constituted marital property. Short v. Short, 356 S.W.3d 235, 242 (Mo. App. E.D. 2011) (explaining that the general rule is that income generated during the marriage is marital property); McKown, 108 S.W.3d at 185 (stating that salary earned during the marriage was, by definition, marital property). Husband then commingled the different deposits made into the single Bank of America checking account. Moore v. Moore, 189 S.W.3d 627, 638 (Mo. App. W.D. 2006).
Property which would otherwise be non-marital property does not necessarily become marital property solely because it has been commingled with other marital property. Section 452.330.4; Moore, 189 S.W.3d at 637. "However, '[o]nce commingling occurs, the party claiming separate property has the burden of establishing that an identifiable portion of the funds can be traced to specific nonmarital assets.' " Meier v. Meier, 306 S.W.3d 692, 702 (Mo. App. E.D. 2010) (quoting In re Marriage of Looney, 286 S.W.3d 832, 837 (Mo. App. S.D. 2009) ); see Moore, 189 S.W.3d at 637-38.
Here, Husband's belated argument that only his military pension was used for mortgage payments is unavailing. The trial court was not required to credit Husband's self-serving testimony asserting that he only used his military pension to reduce the mortgage. See Schubert v. Schubert, 366 S.W.3d 55, 72 (Mo. App. E.D. 2012) (explaining that the trial court is free to disbelieve a party's testimony); Hart v. Hart, 210 S.W.3d 480, 487 (Mo. App. W.D. 2007) (same). Throughout the entirety of the marriage, Husband intentionally deposited his income into his Bank of America checking account. The account commingled separate and marital property.[4] From that account. Husband regularly paid for both marital and non-marital expenses, including the Residence's mortgage. The case before us is not that of a single payment made on the separate property from an account with commingled funds. Cf. Moore, 189 S.W.3d at 637-38. Nor does the evidence show that Husband's commingling of his incomes was incidental or inadvertent. Cf. id. Husband did not maintain separate accounting for the military pension or any records designating the military pension for specific expenses. Husband cannot account for the expenditures he credited to his military pension besides the purported mortgage payments. The record before us simply lacks sufficient evidence documenting and tracing Husband's incoming funds to payments on specific expenses.[5]
Importantly, the record clearly establishes that Husband completely controlled the parties' finances during the marriage. Husband easily could have maintained separate accounts or clearly established any expenditures attributed to the military pension, but chose not to do so. Husband *790 cannot now complain of the trial court's classification of the equity earned by the mortgage payments as marital property, given that Husband treated the Bank of America checking account as marital property.[6] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 638.
Overall, the record fails to support Husband's contention that the trial court erred in determining that the equity accrued during the marriage was marital property. Nor does the record suggest that the trial court's division of the accrued equity was in error. We deny Point Three.
Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., P.J. concurs.
Sherri B. Sullivan, J., concurs.

All statutory references are to RSMo (2016).

The trial court found that Wife had no significant income-producing marital property apportioned to her that would assist her in meeting her reasonable needs.

Husband states that the six-and-a-half-year marriage was a short-term marriage. The parties married in January 2009, Husband filed for divorce in May 2015, and the trial court dissolved the marriage in September 2016. Husband ignores support for the proposition that the trial court must measure a marriage's duration from the start of the marriage to the trial court's dissolution of the marriage. See, e.g., Milne v. Milne, 138 S.W.3d 162, 165 (Mo. App. W.D. 2004). For the purposes of this appeal, we need not calculate the precise length of the marriage.

We note that Husband purportedly experienced a period of unemployment during the marriage. Presumably, during that period, Husband's only income was his monthly military pension. However, Husband does not specifically argue on appeal that, during his unemployment, he only made mortgage payments with separate property, and so we decline to address that argument.

The parties also renovated portions of the Residence during the marriage. Husband does not present sufficient evidence establishing that the money used to improve the Residence came from separate property, rather than from marital funds.

Husband conceded in his brief that the trial court could properly classify the Bank of America checking account as marital property.