

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

SHELBIE TORRES, )
)
)
Respondent, )  **WD82498**
v. )
)
)  **OPINION FILED:**
)  **April 14, 2020**
ALEJANDRO RAUL TORRES, )
)
Appellant. )

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Susan E. Long, Judge**

**Before Division Four:**  Karen King Mitchell, Chief Judge, and
Cynthia L. Martin and Edward R. Ardini, Jr., Judges

Alejandro Torres (Husband) appeals the property distribution portion of the amended judgment dissolving his marriage to Shelbie Torres (Wife).[1]  Husband raises three points on appeal, all pertaining to the trial court's order that Husband pay Wife $302,300.50 to equalize the distribution of marital property.  Husband argues that the court erred in ordering the equalization payment because the court (1) misapplied Missouri law governing when equity in a spouse's non-marital company can be deemed marital property; (2) lacked substantial evidence to support

---

[1] Husband does not challenge the trial court's award of custody, child support, spousal maintenance, or professional fees.

its finding that Husband's business has a marital value of $348,965.00; and (3) failed to subtract the $234,554.00 mortgage on the marital home from the calculation of the net marital estate before calculating the equalization payment. We affirm the trial court's holding that the increase in the value of Husband's non-marital company during the marriage is marital property, but we reverse and remand for the court to clarify the effect of the $234,554.00 marital liability on the calculation of the equalization payment.

## Background[2]

The parties were married on October 12, 2013, in Las Vegas, Clark County, Nevada, where the marriage is registered. Three children were adopted or born during the marriage. The parties separated after Wife discovered that Husband was involved in an extramarital relationship. Wife petitioned for dissolution on April 4, 2017, and Husband filed a counter petition for dissolution on May 1, 2017. On September 10 and 17, 2018, the matter came to trial.

In 2005, Husband opened a plumbing business as a sole proprietorship. In May 2013, shortly before he married Wife, Husband converted his business to a single-member limited liability company, Alex's Plumbing, LLC (the Business), with Husband as the sole member. Wife retained Michael McLain, a business appraiser and certified public accountant specializing in business valuations, to calculate the value of the Business as of December 31, 2017. McLain testified that he used both the asset-based method and the market-based method to value the Business, which he opined was worth $475,506.00 under the asset-based approach (including inventory) and $466,722.00 under the market-based approach. Based on the information available to him, McLain concluded that the latter figure represented the fair market value of the Business.

---

[2] "We view the evidence and reasonable inferences therefrom in the light most favorable to the decree and disregard all evidence to the contrary." *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo. App. W.D. 2004).

McLain also testified that the value of the Business as of the date of the parties' marriage was $117,757.00.

Wife testified that she worked for the Business throughout the marriage, using an office in the marital home where Husband worked and stored his business records.[3] Wife kept all licenses for the Business current. She assisted the Business in obtaining a federal tax identification number in 2013 and a U.S. Department of Transportation (DOT) number in 2016.[4] She typed all bids and invoices and kept all insurance current. She also provided administrative assistance in connection with the Business's bid for its most lucrative contract. Wife did not receive compensation for the work she performed for the Business, and she otherwise did not earn any income during the marriage; she was the homemaker and primary childcare provider.

Husband testified that Wife spent "[p]robably 10 to 12" hours per week performing "clerical work" for the Business. Wife continued to perform those duties for the Business until August 2017 when Husband removed her from company emails and hired a full-time employee to do the work previously performed by Wife; Husband pays that employee $400.00 per week or $20,800.00 per year.

Husband further testified that, during the marriage, he withdrew money from a marital savings account at his sole discretion to pay the Business's bills when necessary to keep the Business afloat. He stated,

> Sometimes we're on 30-day payouts, 60-day payouts, 90-day payouts, 180-day payouts. So we might not—I'm not going to receive a check for 180 days. And bills come due every 30 days. There's mortgage, gas, lights, everything else, and if there's no money in Alex's Plumbing account, I take it from this [marital savings]

---

[3] Wife also worked for the Business, without compensation, before the parties were married, but we are concerned with only the services Wife performed during the marriage. *See Meservey v. Meservey*, 841 S.W.2d 240, 246 n.4 (Mo. App. W.D. 1992).

[4] Wife testified that she obtained the DOT number because the Business was incurring tickets in the amount of "at least $2,000 a time" for operating vehicles over a certain weight.

3

account. And I move it to Alex's Plumbing account to pay my bills. *I've always done that*, and I continue—that's how I run my business.

(Emphasis added.) There was no evidence that Husband reimbursed the marital savings account for the withdrawals he made to cover the Business's expenses.[5]

Husband also testified about an office/warehouse building located at 2625 East 9th Street in Kansas City. The building, valued at $115,000.00, was purchased during the marriage, using marital assets, and was used by the Business as a warehouse to store equipment and materials and later as an office as well. Husband never claimed the building as a business asset for tax purposes, and when Husband performed his own valuation of the Business's assets, he did not include the building. There was no evidence that the Business paid rent or otherwise compensated the marital partnership for the Business's use of the building.

The parties did not request specific findings of fact. On November 20, 2018, the court entered its judgment, which included findings of fact and conclusions of law. Husband filed a timely motion to vacate, amend, or set aside the judgment or in the alternative grant a new trial. On December 18, 2018, the trial court entered its amended judgment denying Husband's motion.

In its amended judgment, the court valued the "net marital estate" at $1,067,555.00, with the assets assigned to Husband valued at $601,524.00 and the assets assigned to Wife valued at $466,031.00. The only marital liability listed by the court was a $234,554.00 mortgage on the marital home.[6] The court assigned the marital home and the outstanding mortgage to Wife,[7]

---

[5] For example, according to Husband's testimony, during the months of May, June, and July 2018, he transferred approximately $100,000.00 from the marital savings account to the Business's account and used an unspecified portion of that money to cover expenses of the Business.

[6] The court concluded that the home was clearly a marital asset. Husband "did not present any evidence to rebut the presumption that the entire value of the house was marital." The court also concluded that the mortgage "is a marital liability although the note is in [Husband's] sole name."

[7] The court ordered Wife to "be 100% responsible for payment on the mortgage note in the approximate amount of $230,000.00 beginning December 1, 2018 and . . . indemnify and hold [Husband] harmless for her failure to do so."

4

thereby reducing the value of Wife's assigned assets to $231,477.00 (the value of the assets assigned to Wife including the marital home ($466,031.00) minus the outstanding mortgage ($234,554.00)). The judgment then states, "Each party to receive 50%: $533,777.50. Husband pays to Wife to equalize division: $302,300.50."

The court awarded Husband the Business, along with the vehicles, machinery, inventory, and supplies, valued at $466,722.00, as calculated by McLain. But the court determined that the Business had a marital value of $348,965.00 ($466,722.00 minus $117,757.00, the value of the Business at the time of the marriage). The court found that Wife worked for the Business ten-to-twelve hours per week and that "she was instrumental in obtaining DOT tags and other licenses necessary to operate the business." The court also found that the office/warehouse building used by the Business to store equipment and supplies was a marital asset. And the court concluded that the marital savings account, which had a balance of $250,000.00 when Wife filed her petition for dissolution, had been dissipated by Husband, in violation of an earlier restraining order entered by the court. The court found that Husband

> justified the use of nearly $215,000.00 from the [marital] account under the "usual course of business" or "necessities of life" exceptions[, but Husband] did not notify [Wife] of the proposed extraordinary expenditures or show an accounting to the Court for all [such] expenditures [he] made.

The Court included the marital value of the Business ($348,965.00) in the property division to form the basis of Husband's equalization payment to Wife. The court stated, "In consideration of the equitable division of the parties' marital estate, the Court finds that to equalize the division of property set forth above [Husband] shall pay to [Wife] the sum of $302,300.50." The court found its division of assets and debts to be "fair and equitable under the circumstances and . . . not unconscionable."

5

Following issuance of the amended judgment, Husband timely filed a motion to vacate, amend, or set aside the amended judgment or in the alternative grant a new trial; the court denied the motion "[a]fter careful consideration and for good cause shown," offering no further explanation for its division of marital assets and liabilities. This appeal follows.

**Standard of Review**

In a dissolution proceeding, we will affirm the trial court's decision "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo. App. W.D. 2004). "We defer to the trial court's superior ability to view the witnesses and determine credibility; the court is free to believe or disbelieve all, part or none of the testimony given by any of the witnesses." *Klockow v. Klockow*, 979 S.W.2d 482, 487 (Mo. App. W.D. 1998). "Consequently, we accept the evidence and inferences favorable to the trial court's ruling and disregard contrary evidence." *Id.* And, where the parties do not request specific findings of fact on an issue, we presume the trial court entered its judgment on that issue in accordance with the applicable statutes. *Krepps v. Krepps*, 234 S.W.3d 605, 615-16 (Mo. App. W.D. 2007).

"The trial court has substantial discretion in dividing marital property, and appellate courts will not interfere unless the division is so heavily weighted in favor of one party to amount to an abuse of discretion." *Russum v. Russum*, 214 S.W.3d 376, 384 (Mo. App. W.D. 2007). "We presume that the trial court's division is correct and the party challenging it bears the burden of overcoming that presumption." *Klockow*, 979 S.W.2d at 488. "We will affirm the division of property unless it is unduly weighted in favor of one party." *Selby*, 149 S.W.3d at 482.

However, we will reverse where a judgment is based on inconsistent or ambiguous findings that do not permit appellate review. *Finest Place, Inc. v. Skidmore*, 477 S.W.3d 745, 749 (Mo. App. S.D. 2016).

## Analysis

Husband raises three points on appeal.[8]  He argues that the trial court erred in ordering him to pay Wife $302,300.50 to equalize the distribution of marital assets because (1) the order is based on a misapplication of Missouri law governing when equity in a spouse's non-marital company can be deemed marital property (Point I); (2) there was insufficient evidence to support a finding that the Business has a marital value of $348,965.00 (Point II);[9] and (3) the court failed to subtract the $234,554.00 mortgage on the marital home awarded to Wife from the calculation of the net marital estate (identified in Husband's opening brief as Point IV).  Because Husband's first two points are so closely intertwined, we discuss them together.

In a dissolution proceeding, "the court shall set apart to each spouse such spouse's non[-]marital property and shall divide the marital property and marital debts in such proportions as the court deems just."  § 452.330.1.[10]  Thus, "[a]n equitable division of property is predicated on the proper classification of the parties' property as either non-marital or marital." *Moore v. Moore*, 189 S.W.3d 627, 632 (Mo. App. W.D. 2006).

"As a general principle, property owned by one spouse prior to the marriage will remain non-marital property and will be awarded to the owner of that property." *Collins v. Collins*, 586 S.W.3d 282, 294 (Mo. App. W.D. 2019) (quoting *Fox v. Fox*, 552 S.W.3d 777, 788 (Mo. App.

---

[8] In his opening brief, Husband raises four points, but in his reply brief, he asserts that his third point is now moot, so we do not address Husband's Point III on appeal.

[9] Husband does not challenge the valuation of the Business per se; instead, he argues that the court erred in calculating the portion of his ownership interest in the Business that is a marital asset.

[10] All statutory references are to the Revised Statutes of Missouri (2017), unless otherwise noted.

E.D. 2018)). "Thus, the property is usually considered non-marital if a spouse owned it before the marriage and retained title to it." *Id.* (quoting *Fox*, 552 S.W.3d at 788).

Marital property is all property acquired by either spouse after the marriage except, among other exceptions not relevant here, "[t]he increase in value of property acquired prior to the marriage . . . , unless marital assets including labor[] have contributed to such increases and then only to the extent of such contributions." § 452.330.2(5). Thus, "non-marital property may be characterized as marital property if evidence is presented that under the source[-]of[-]funds rule, a party is entitled to a portion of the non-marital property." *Collins*, 586 S.W.3d at 294; s*ee also Beckham v. Beckham*, 41 S.W.3d 908, 912 (Mo. App. W.D. 2001) (discussing the "source[-]of[-]funds" doctrine). "Under the source[-]of[-]funds rule, 'any increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase.'" *Collins*, 586 S.W.3d at 294 (quoting *Selby*, 149 S.W.3d at 484). At trial, the spouse advocating application of the source-of-funds rule to characterize non-marital property as marital property bears the burden of proving that there was an increase in value of the non-marital property due to marital labor or other marital assets. *Brooks v. Brooks*, 911 S.W.2d 631, 633-34 (Mo. App. E.D. 1995) ("non-owning spouse must show that her contributions were a causal factor in the increase in value").

Here, the Business is separate property because it was started by Husband before the marriage. § 452.330.2. Substantial evidence supported the trial court's finding that the value of Husband's ownership interest in the Business increased during the marriage; there was also substantial evidence to support the court's determination of the amount of that increase. At issue is whether there is substantial evidence to support the court's finding that the entire increase in value ($348,965.00) is marital property because marital effort and marital property contributed to

the increase. Husband argues that the evidence is insufficient to support the court's finding because (1) the reasonable inference is that the value of Wife's services to the Business during the marriage is only $83,200.00; (2) there is no evidence of the rental value of the office/warehouse building at 2625 East 9th Street; and (3) there is no evidence of the amount of marital funds used by the Business.

With respect to marital labor,

Marital labor, effort, or services will entitle a spouse to a proportionate share of the increase in value of the other spouse's separate property only after comprehensive substantiation. Entitlement to a share of the increased value based on marital effort requires proof of (A) a contribution of substantial services;[] (B) a direct correlation between those services and the increase in value;[] (C) the amount of the increase in value;[] (D) performance of the services during the marriage;[] and (E) the value of the services,[] the lack of compensation,[] or inadequate compensation.[]

*Meservey v. Meservey*, 841 S.W.2d 240, 245-46 (Mo. App. W.D. 1992). "The law refuses to recognize services as substantial marital effort sufficient to create a marital interest in property in the absence of proof of the value of the services and the connection between their performance and any increased value of the property." *Moore*, 189 S.W.3d at 634 (quoting *In re Marriage of Patroske*, 888 S.W.2d 374, 379 (Mo. App. S.D. 1994)).

In *Moore*, the wife appealed the trial court's classification of the increased value of corporate stock separately gifted to her by her parents. *Id.* at 631. During the marriage, the net stock value had increased substantially while the husband was president of the corporation, a position for which he was undercompensated. *Id.* at 631-32. We found that husband's undercompensation had denied the marital partnership income, which was marital property. *Id.* at 634. "Husband diverted income from the marriage for the purpose of increasing the value of non-marital assets . . . . In dividing the property, therefore, the trial court must consider whether a proportionate share of the increase in value of the non-marital property resulted from Husband's

contribution." *Id.* (internal citation omitted). We concluded that "the marital portion of the increased value should constitute the amount that Husband was inadequately paid for his thirteen years as president." *Id.* at 635.

Here, the trial court found that Wife worked for the Business doing uncompensated "clerical work" ten-to-twelve hours per week and that "she was instrumental in obtaining DOT tags and other licenses necessary to operate the business." Wife did not offer evidence regarding the value of her services. But Husband testified that Wife spent "[p]robably 10 to 12" hours per week performing "clerical work" for the Business and that he had hired a full-time employee at a salary of $400.00 per week or $20,800.00 per year to do the work previously performed by Wife. Thus, there was substantial evidence to support a finding that, *at a minimum*, the value of Wife's work for the Business during the course of the marriage (October 2013 to August 2017, inclusive) was approximately $83,200.00.[11] Based on Wife's testimony, which the court found credible, there was substantial evidence to assign a higher value to Wife's services for the Business because she was instrumental in obtaining various licenses necessary to operate the Business. Specifically, Wife assisted the Business in obtaining a required federal tax identification number and DOT number, which the Business needed to avoid significant fines. Wife also kept all the Business's licenses and insurance current. Thus, the record supports a finding that Wife's services added considerable value to the Business, yet she did not receive any compensation for her services.[12]

Under the source-of-funds rule, courts also consider whether marital assets, other than marital labor, contributed to the increase in the value of non-marital property. "While a marital

---

[11] In his reply brief, Husband admits, "Indeed a reasonable inference can be made that the value of [Wife's] effort to the Business was $20,800 per year" or $83,200.00 during the marriage.

[12] Neither party argues that Husband's labor on behalf of the Business was marital property, presumably because, during the marriage, Husband was well compensated by the Business and his compensation was treated as marital property.

interest in separate property can require proof that a spouse contributed substantial *services* towards the property which led to an increased value of that property, this type of proof is not needed . . . when the marital partners sacrifice marital *funds* . . . in acquiring the increase." *In re Marriage of Rogers*, 300 S.W.3d 567, 577 (Mo. App. S.D. 2009) (quoting *McKown v. McKown*, 108 S.W.3d 180, 184 (Mo. App. W.D. 2003) (emphasis in original) (internal citation and quotations omitted)). In *Rogers*, the Southern District of this court found that marital contributions made by expending marital funds for improvements to separate property and to reduce debt on the property provided a causal connection between an increase in the net worth of the property during the marriage and a substantial marital contribution. *Id.*; *see also McKown*, 108 S.W.3d at 184-85 (finding husband was obligated to give wife a portion of the increased equity in property he acquired before the marriage where the mortgage on the property was paid out of the parties' joint checking account using marital funds); *Rhodus v. McKinley*, 16 S.W.3d 615, 618-19 (Mo. App. W.D. 2000) (where husband sold marital property and used the proceeds to pay off a $53,500 business debt, the trial court properly applied the source-of-funds rule to find that the $53,500 increase in the value of the business was marital property).

Here, there was evidence that, during the marriage, the parties purchased the building located at 2625 East 9th Street, which the Business used to store equipment and materials and later as an office as well. There was no evidence that the Business compensated the marital partnership for use of that building, however. Although there was no evidence of the exact rental value of the building, we know that the building was valued at $115,000.00 and that the parties purchased it in November 2013, so the reasonable inference is that the Business used the building for at least five years. In addition, Husband testified that he had "always" withdrawn money from the parties' savings account at his sole discretion to pay the Business's bills when necessary to keep the

11

Business afloat. Husband argued that neither party offered evidence regarding the specific amount of money Husband withdrew from the marital account to run the Business.[13] But, based on Husband's testimony regarding his long-standing practice of using marital funds in that manner without Wife's approval or knowledge and his testimony about the amount he transferred from the marital account to the Business's account from May through July 2018 (approximately $100,000.00), the reasonable inference is that Husband withdrew significant amounts of money from the marital savings account to support the Business and that access to such funds was instrumental to the success of the Business. Thus, the evidence supports a finding that, during the marriage, Husband also withdrew significant amounts from the marital account to run the Business.

Because neither Husband nor Wife asked the trial court to make specific findings of fact, we presume the trial court correctly applied § 452.330.2(5) (the source-of-funds rule) in entering its judgment. *Krepps*, 234 S.W.3d at 615-16. The trial court accepted McLain's testimony that Husband's ownership interest in the Business had increased by $348,965.00 during the marriage, and Husband does not challenge this on appeal. And, based on the evidence, the court classified the entire increase as marital property. Under *Krepps*, we presume the court did so because it found that the increase was due to marital effort and other marital contributions.

Based on the evidence of Wife's work for the Business, the Business's rent-free use of marital property, and Husband's indiscriminate use of marital funds to pay the Business's bills, we find there was substantial evidence to support the court's classification of the entire $348,965.00 increase in Husband's ownership interest in the Business as marital property. And, as the appellant, Husband has the burden on appeal to show that the evidence and reasonable inferences

---

[13] There was testimony that Husband did not maintain detailed financial records for the Business.

drawn therefrom are insufficient to support the trial court's finding—a burden that Husband did not meet.

Having found that there was substantial evidence to support the trial court's conclusion under § 452.330.2(5) that the Business had a marital value of $348,965.00, we also find that the court did not misinterpret or misapply that statute.

Points I and II are denied.[14]

For his third point (identified in Husband's opening brief as Point IV), Husband argues that the court erred by failing to subtract the $234,554.00 mortgage on the marital home, which the court awarded to Wife, from the calculation of the net marital estate, resulting in an excessive equalization payment from Husband to Wife in the amount of $302,300.50. Husband's argument is based on language in the judgment that references the "net marital estate" valued at $1,067,555.00 and the court's intention that "[e]ach party . . . receive 50%: $533,777.50." Husband argues that use of the term "net marital estate" reflects the court's intention to divide the marital assets minus the marital debt equally between the parties. But, instead of subtracting the marital debt (the mortgage) from the sum of the marital assets to calculate the net estate, the court split the assets equally and then subtracted the entire mortgage from Wife's half before calculating Husband's equalization payment. Had the amount of the marital debt ($234,554.00) been subtracted from the gross marital estate to determine the value of the net marital estate ($832,996.00) and had the court still given each spouse 50% of the net marital estate, Husband's equalization payment to Wife would have been reduced by $117,277.00 (one half of the amount of the mortgage) and each spouse would have received $416,498.00.[15]

---

[14] In view of our disposition of Points I and II, we need not address Wife's argument, raised for the first time on appeal, that the Business is Husband's alter ego.

[15] Although the judgment states that each party is to receive $533,777.50, with the equalization payment, Wife receives that amount but Husband receives only $299,224.50.

"The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case." *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo. App. W.D. 2000). And the trial court has substantial discretion in dividing marital property and marital debt. *Russum*, 214 S.W.3d at 384.

The problem this court faces on appeal is that, while the trial court had the discretion to divide the marital estate unequally, that is not what the trial court said that it was doing. The court stated that each party was to receive fifty percent of the net marital estate, meaning each spouse would receive half of the marital assets and half of the marital debt. But, after assigning each spouse an equal share of the marital assets, the court assigned the entire amount of the mortgage (the only marital debt) to Wife, thereby reducing the value of the assets distributed to her and increasing the amount of the equalization payment due from Husband.

On appeal, Wife argues that the trial court is not required to divide the net marital estate equally, that the court elected to give Wife the greater share of the net assets, and that, in choosing such a distribution, the court did not abuse its discretion. While we agree that the trial court has the discretion to divide the marital estate unequally, it is not clear that is what the court intended to do. In support of her argument that the trial court intended to make an unequal distribution, Wife notes that the amended judgment "specifically laid out, paragraph-by-paragraph . . . [what] each piece of property was worth and to whom it was being given, and then ordered Husband to make an equalization payment of $302,300.50." While that is true, the amount of the equalization payment and the resulting unequal distribution of marital assets is solely the product of the trial court's calculation of the "net marital estate."

In paragraph 56 of the amended judgment, the trial court includes two charts: the first sets out the value of marital assets ($1,067,555.00), and the second that sets out a marital liability of

$234,554.00. Immediately below the charts, the judgment states that the "net marital estate" is $1,067,555.00, and that it is the intent of the court to divide the estate equally with each party receiving $533,777.50. The "net" assets of an entity is the excess of its assets over its liabilities. *Net Assets*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/net assets (last visited March 9, 2020). But the $1,067,555.00 amount identified by the trial court as the net marital estate does not take into consideration the marital liability. Rather $1,067,555.00 is the number in the first chart that represents the total value of the marital assets ($601,524.00 awarded to Husband and $466,031.00 awarded to Wife).

After concluding that half of the net marital estate is valued at $533,777.50, the court reduced the value of the assets awarded to Wife by the total amount of marital liability ($466,031.00 - $234,554.00 = $231,477.00) and ordered Husband to pay $302,300.50 to equalize the distribution of assets ($533,777.50 - $231,477.00 = $302,300.50). This would have resulted in an equal distribution of marital assets if the mortgage was not a marital liability. But, in the judgment, the court concluded that the mortgage is a marital liability even though the note was in Husband's name only. Failing to factor the mortgage into the net marital estate and instead reducing the amount of the assets awarded Wife by the full amount of the mortgage, resulted in an unequal division of marital assets by increasing the amount of the equalization payment by $117,277.00 (one half of the amount of the mortgage). While the trial court certainly had the discretion to divide the property unequally and could have done so without abusing its discretion, the fact that the unequal distribution is one half of the amount of the marital liability and is a result of the net marital assets being calculated without taking the marital liability into consideration, leaves us unable to determine whether the trial court actually intended this unequal distribution.[16]

---

[16] Wife argues that, although the amended judgment does not expressly state the intent to divide the net marital estate unequally, the trial court's intent to do so is evidenced by its denial of Husband's post-trial Motion to

Because it is unclear which approach the court intended—an equal distribution of the net marital estate or an unequal distribution favoring Wife—we remand this case for further clarification on this issue from the trial court. *Finest Place, Inc.*, 477 S.W.3d at 749.

Point IV is granted.

### Conclusion

In light of the foregoing, we affirm the trial court's holding that the increase in the value of Husband's non-marital company during the marriage is marital property, but we reverse the trial court's judgment and remand the cause for the trial court to clarify its treatment of the marital liability in calculating the net marital estate and the amount of the equalization payment owed by Husband.

Karen King Mitchell, Chief Judge

Cynthia L. Martin and Edward R. Ardini, Jr., Judges, concur.

---

Vacate, Amend, or Set Aside the Amended Judgment. Although Husband raised the issue in his motion, in denying the motion, the trial court simply stated that, "[a]fter careful consideration and for good cause shown, said Motion is DENIED." In denying the motion, the trial court did not state that its intent was to divide the assets unequally or otherwise explain the inconsistencies in the amended judgment.